**DREHER LAW FIRM**
Robert Scott Dreher (CSB No. 120527)
Robert Scott Norman (CSB No. 253185)
Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 202
San Diego, CA 92101
619-230-8828 / fax 619-687-0136

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC BEACH UNITED METHODIST CHURCH, a California Religious Corporation; and its Pastor APRIL HERRON;<br><br>Plaintiffs,<br><br>vs.<br><br>The CITY OF SAN DIEGO; CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT; Mayor JERRY SANDERS, City Council Members SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSCHEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, NCC Director MARCIA SAMUELS, NCC Land Development Investigator PAMELA JONES, and City Attorney MICHAEL J. AGUIRRE, in their official capacities; and DOES 1-25;<br><br>Defendants. | Civil Case No.: 07 CV 2305LAB PCL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Judge: Hon. Larry A. Burns<br>Date: February 25, 2008<br>Time: 10:30 a.m.<br>Ctrm: Courtroom 9, Second Floor |

(07 CV 2305)

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THE DEFENDANTS' THREATENED ACTIONS VIOLATE THE FIRST AMENDMENT AND THE RELIGIOUS LAND USE AND INSTITUSTIONALIZED PERSONS ACT ......... 2

    A.   *Providing Food and Care to the Poor Is Protected Religious Exercise* ......................................................................................... 2

    B.   *Defendants' Actions Implement Land Use Regulations in a Manner That Imposes a substantial Burden on Plaintiffs' Religious Exercise* .... 6

II.  PLAINTIFFS WILL SUCCEED ON THE MERITS BECAUSE THE MUNICIPAL ORDINANCES DEFENDANTS SEEK TO ENFORCE ARE FACIALLY INAPPLICABLE TO PLAINTIFFS AND THEIR ACTIVITIES ....................................... 8

III. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF DEFENDANTS ARE NOT ENJOINED BECAUSE THE DEFENDANTS' ACTIONS INTERFERE WITH PLAINTIFFS RELIGIOUS EXERCISE ........................................................... 9

IV.  THE HARM TO PLAINTIFFS IN THE ABSENCE OF AN INJUNCTION VASTLY OUTWEIGHS ANY HARDSHIP DEFENDANTS MIGHT FACE IF AN INJUNCTION IS GRANTED ............................................................................................. 10

CONCLUSION ................................................................................................... 11

## TABLE OF AUTHORITIES

**Federal Cases:**

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................ 9

*Guru Nanak Sikh Society of v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006)............ 4

*Hernandez v. Commissioner*, 490 U.S. 680 (1989) ...................................................... 6

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996)................................................................ 4

*New York v. Cathedral Academy*, 434 U.S. 125 (1977).............................................. 5

*Sherbert v. Verner*, 374 U.S. 398 (1963)....................................................................... 6

*Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000).. 2

*Stuart Circle Parish v. Board of Zoning Appeals*, 946 F. Supp. 1225 (E.D. Va. 1996)... 3

*Thomas v. Review Bd.*, 450 U.S. 707 (1981)................................................................ 6

*Vietnamese Buddhism Study Temple v. City of Garden Grove*, 460 F. Supp. 2d 1165
    (C.D. Cal. 2006)........................................................................................................ 6

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)................................................ 6

*Western Presbyterian Church v. Board of Zoning*, 862 F. Supp. 538 (D.D.C. 1994)..... 3

*Zepeda v. United States Immigration and Naturalization Svs.*, 753 F.2d 719
    (9th Cir. 1983)........................................................................................................... 9

**Statutes**:

U.S. Const. amend. 1..................................................................................................... 1

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et. seq. ...... 1

42 U.S.C. § 2000cc(a)(1) (2000) .................................................................................... 1

42 U.S.C. § 2000cc-3(g) (2000)..................................................................................... 6

CA Penal Code § 647 .................................................................................................. 10

CA Penal Code § 370 .................................................................................................. 10

CA Penal Code § 372 .................................................................................................... 10

CA Penal Code § 640(b)(8) .......................................................................................... 10

CA Penal Code §186(a)(17) ..........................................................................................10

S.D. Mun. Code §131.0406 (2000) ............................................................................... 1

S.D. Mun. Code §131.0420 (2000) ............................................................................... 1

S.D. Mun. Code §141.0422 (2000) ............................................................................... 1

S.D. Mun. Code §141.0412(a)(3) (2000) ...................................................................... 1

S.D. Mun. Code §113.0103 (2007) ............................................................................... 2

N:\JD\CASES\264\PBUMC-INJ-TOC.doc

(07 CV 2305)

## INTRODUCTION

Plaintiffs in this case are a 60-year-old local church, the Pacific Beach United Methodist Church, its pastor, and its congregation, who wish to continue practicing one of the fundamental tenets of their Christian religion on the Church's property by sharing religious services and a meal with the poor, the hungry and the homeless, and others, on Wednesday nights.

The First Amendment to the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at 42 U.S.C. §§ 2000cc et seq., prohibit the City from enforcing zoning ordinances in a manner that infringes on Plaintiffs' free exercise of religion. The First Amendment declares that Congress, and the State, "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. 1. RLUIPA provides that the City cannot:

> impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that the imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling government interest; and
>
> (B) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc(a)(1) (2000).

Nevertheless, the City has attempted to restrain Plaintiffs' religious exercise under San Diego Municipal Code §§ 131.0406, 131.0420, 131.0422, and 141.0412(a)(3), which prohibit the operation of "homeless day centers" in residential areas. A "homeless day center" is defined as "[a]ny facility that provides basic services, including personal hygiene, information and referral, employment, mail, and telephone services, during daylight hours to

Memorandum of Pts. & Authorities Supporting Plaintiffs' Motion for Preliminary Injunction.

1

homeless persons." S.D. Mun. Code § 141.0412(a)(3). The Church's activities include <u>none</u> of those listed "services." By contrast, a "church" is defined under the Code as "an institution that people regularly attend to participate in or hold <u>religious services</u>, <u>meetings</u>, <u>or other activities</u>." *Id.* §113.0103 (emphasis added).[1]

Plaintiffs ask the Court to issue a Preliminary Injunction ordering Defendants not to cite or arrest Plaintiffs for violation of Municipal Code zoning ordinance §§ 131.0406, 131.0420, 131.0422, and 141.0412(a)(3), and enjoining Defendants from initiating legal action to prevent, hinder, or delay Plaintiffs from hosting, attending and participating in Wednesday evening ministry services at their church.

## ARGUMENT

Plaintiffs are entitled to a Preliminary Injunction, pursuant to FRCP 65, and under the standards applied in this Circuit. A Preliminary Injunction is to be granted upon a showing of either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) serious questions regarding the merits and that the balance of the hardships tips sharply in the favor of the moving party. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000).

### I.
### PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE DEFENDANTS' THREATENED ACTIONS VIOLATE THE FIRST AMENDMENT AND THE RLUIPA.

**A.    *Providing Food and Care to the Poor Is Protected Religious Exercise.***

In order to claim First Amendment and RLUIPA protection for their Wednesday Night Ministry, Plaintiffs need establish only that their conduct is an act of religious faith and worship, and that their religious belief is sincerely held. Neither is subject to dispute.

---

[1] The Church's activities here include <u>all</u> three of these.

Courts have repeatedly recognized that providing essential services (such as meals and other care) for the homeless and disadvantaged are forms of religious activity and worship protected under the First Amendment.[2] In *Stuart Circle Parish v. Board of Zoning Appeals*, 946 F. Supp. 1225 (E.D. Va. 1996), the City of Richmond attempted to use a zoning ordinance to prevent a group of churches, including a Methodist church, from offering worship, hospitality, care, and meals to the urban poor, once a week.[3] *Id.* at 1228. The Court ruled in favor of the churches, reasoning that "feeding the poor constitutes a central tenet of the religion practiced [by the] churches involved." *Id.* at 1236.

Likewise, the District Court in *Western Presbyterian Church v. Board of Zoning Adjustment*, 862 F. Supp. 538 (D.D.C. 1994), enjoined the application of zoning regulations that sought to bar a church from feeding homeless people on its premises, holding that such was a religious exercise and:

> a form of worship akin to prayer. If zoning regulations cannot be applied to ban prayer in a church, they cannot be used to exclude this type of religious activity. The Church may use its building for prayer and other religious services as a matter of right and should be able, as a matter of right, to use the building to minister to the poor and needy.

*Id.* at 547.

---

[2] *See, e.g., Capital City Rescue Mission v. City of Albany Bd. of Zoning Appeals*, 652 N.Y.S.2d 388, 390 (N.Y. App. Div. 1997) ("Here, it is not disputed that petitioner's functions are not for profit. Its mission statement also reflects its religious status. The proposed uses of the facility include providing food, clothing, shelter, counseling, medical care, educational training and spiritual guidance to disadvantaged individuals. Even if we accepted respondent's conclusion that these activities did not fall within the definition of a house of worship, we fail to see how they do not comport with the definition of a religious or charitable institution."); *Henley v. City of Youngstown Bd. of Zoning Appeals*, 735 N.E.2d 433 (Ohio 2000) (holding that providing transitional apartments for homeless women and their children in former convent on church property was a religious use of the property permitted by the zoning regulations, although the court did not decide the case on constitutional grounds); *Solid Rock Ministries Int'l v. Monroe Bd. of Zoning Appeals*, 740 N.E.2d 320, 328 (Ohio Ct. App. 2000) (holding that the church facility to house unwed pregnant teenagers was "an integral part of [the church's] Christian and missionary purposes..."), appeal dismissed, 736 N.E.2d 901 (Ohio 2000); *Western Presbyterian Church v. Board of Zoning Adjustment*, 862 F. Supp. 538 (D.D.C. 1994)("It must be noted that the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions.").

[3] Like PBUMC, the Methodist church plaintiff in *Stuart* had conducted its feeding program for nearly 15 years without complaint. *Stuart Circle Parish*, 946 F. Supp. at 1228.

Just over 20 years ago the City of San Diego attempted to enforce similar ordinances in a virtually identical situation, and Judge Edward Schwartz ordered it not to do so. *Sonrise Christian Fellowship v. City of San Diego*, No. 86-1429 S (S.D. Cal. June 23, 1986) (order granting injunction) (*See* Plaintiffs' Request for Judicial Notice ("RFJN") ¶ 1-2; Ex. 1-2). Nothing has changed. Defendants' actions are a violation of that Order.

Neither the Defendants nor the Court can litigate or decide the degree to which the Church's use of its own property has religious, symbolic, or sacramental importance. The Court's "scrutiny extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature," (*Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996)):

> Once the zoning authorities of a city permit the construction of a church in a particularly locality, the city <u>must</u> refrain, absent extraordinary circumstances, from in any way regulating what religious functions the church may conduct. Zoning boards have no role to play in telling a religious organization how it may practice its religion.

*Western Presbyterian Church v. The Bd. of Zoning Adjustment of the Dist. of Columbia*, 862 F. Supp. at 546 (emph. added) (<u>see also</u>, *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 987 (9th Cir. 2006) (city cannot use facially-neutral zoning code to deny a certain religious use of a particular parcel of land)). "The prospect of church and state litigating about what does or does not have religious meaning touches the very core of the constitutional guarantee against religious establishment," and cannot occur. *New York v. Cathedral Academy*, 434 U.S. 125, 133 (1977).

The evidence here establishes beyond question that the practice of providing food and care to the needy is an exercise of well-rooted and sincerely-held religious belief. (Herron Decl. ¶¶ 5-23; RFJN ¶ 2). The act of providing ministry, food and care to the poor is grounded in two thousand years of Christian faith and history. (Herron Decl. ¶¶ 7-23).

Plaintiffs have referenced a widely recognized authority, <u>The Bible</u>, which demonstrates that providing food to the poor is scripturally based. (Herron Decl. ¶¶ 8-23). The Bible is replete with passages commanding its followers to care for the poor (*See, e.g.,* 1 *Corinthians* 11:20-23; 1 *John* 3:17; *Ezekiel* 18:5-9), and tells them that they will one day be judged on whether or not they gave food to the hungry, drink to the thirsty, welcome to the stranger, clothing to the naked, and care to the sick. (*Matthew* 28:35-36).

It has been an especially significant tenet of Methodism since John Wesley began what became the Methodist movement in England in the 1700s. (Herron Decl. ¶¶ 5-6). From Wesley's early sermons through today, Methodists are taught:

> He who had the love of God in his heart... was athirst to do good. The language of his heart continually was, 'My Father worketh hitherto, and I work.' My Lord 'went about doing good'; and shall not I 'tread in his steps'? As he had the opportunity, therefore ... he fed the hungry, clothed the naked, helped the fatherless or stranger, visited and assisted them that were sick or in prison.

(Herron Decl. ¶ 6). The significance of this practice was noted by the *Stuart* Court, which observed that "[c]aring for the poor has been central to the Methodist faith and was a formal teaching of John Wesley, the founder of Methodism." *Stuart Circle*, 946 F. Supp. at 1236.

Plaintiffs view their Wednesday Night Ministry as the physical embodiment of a central tenet of their Christian faith -- ministering to the poor, the hungry and the homeless in the community. Therefore, it is religious exercise entitled to protection under the First Amendment and RLUIPA.

**B.  *Defendants' Actions Implement Land Use Regulations in a Manner that Imposes a Substantial Burden on Plaintiffs' Religious Exercise.***

Defendants' actions herein implement, and threaten to implement, land use regulations in a manner that substantially burdens Plaintiffs' ability to practice a tenet of their

religious beliefs. Absent injunctive relief by this Court, Plaintiffs will be unable to minister to, feed, and care for the poor as their beliefs counsel.

The test for what is a "substantial burden" is extremely broad. Congress specified that the substantial burden clause must be interpreted and construed broadly in favor of protecting religious exercise: "[T]o the maximum extent permitted by the terms of this [Act] and the Constitution." 42 U.S.C. § 2000cc-3(g) (2000).

The question of whether state action imposes a substantial burden on religious exercise depends on whether the conduct curtailed by the state would cause "an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981). In other words, a substantial burden on religious exercise exists when compliance with governmentally dictated or proscribed behavior would cause a religious adherent to trespass on a "central religious belief or practice." *Hernandez v. Commissioner*, 490 U.S. 680, 699, 104 L. Ed. 2d 766, 109 S. Ct. 2136 (1989).

A substantial burden is found when a person is required to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning the precepts of her religion . . . on the other." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). In *Vietnamese Buddhism Study Temple v. City of Garden Grove*, 460 F. Supp. 2d 1165 (C.D. Cal. 2006), the Court considered whether the City of Garden Grove could use a zoning ordinance to prevent plaintiffs from practicing their Buddhist faith on the Temple's property. *Id.* at 1166. The plaintiff Temple was forced to choose between compliance with its religion or compliance with a municipal ordinance. In granting the Temple's motion for an injunction, the Court adopted the Ninth Circuit's reasoning in *Warsoldier v. Woodford*, which found that forcing someone to "choose between following his religious beliefs and suffering

continual punishment, and abandoning his religious beliefs to avoid such punishment" substantially burdens religious exercise. *Id.* at 1172 (*quoting Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005)). The Supreme Court says that such a choice "puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." *Sherbert v. Verner*, 374 U.S. at 404.

Here, Plaintiffs are confronted with the same impossible choice: Do they follow their faith and continue to worship as their faith commands (risking fine, jail, closure of the Church?), or follow the decision of a City bureaucrat, forsaking spiritual redemption? Plaintiffs' acts of ministering to the poor are manifestations of their religious faith. Defendants' actions "substantially burden" Plaintiffs' religious exercise by requiring the cessation of a tenet of Plaintiffs' religion without any compelling governmental interest.

## II.
## THE MUNICIPAL ORDINANCES DEFENDANTS SEEK TO ENFORCE ARE INAPPLICABLE TO PLAINTIFFS AND THEIR ACTIVITIES.

Even assuming that the challenged zoning ordinances are free of constitutional or statutory defects as applied to Plaintiffs, they are nevertheless inapplicable on their face to Plaintiffs' activities. Municipal Code §131.0406 defines the "Residential Zone" in which Plaintiffs' Church is located, while §§131.0420 and 131.0422 combine to incorporate a list of approved and prohibited uses in that Zone. Section 131.0422 states that "Homeless Day Centers" are not permitted in the Residential Zone. That's all well and good, but the Church is not, and does not operate, a "Homeless Day Center."

Plaintiffs do not provide "basic services," "personal hygiene," "information and referral," "employment," "mail," or "telephone services" to homeless people during daylight

hours.[4] *Id.* §§131.0420. Plaintiffs are a "church," defined under Municipal Code §113.0103 as "*an institution that people regularly attend to participate in or hold religious services, meetings, or other activities*." The Code provides that churches <u>are</u> "Permitted" in the Residential Zones, per §§131.0420 and 131.0422 cited by Defendants.

Plaintiffs' participation in the Wednesday Night Ministry is within the meaning of the terms "church," "participate in," "religious services," "meetings," and "other activities" contained in Municipal Code §113.0103, and thus constitutes a permissible principal use in the RM zones in which the Church is located. Moreover, Plaintiffs' Church was operating in that fashion at that location prior to the enactment in 2000 of these Municipal Code sections.

### III.
### PLAINTIFFS WILL SUFFER IRREPARABLE INJURY WITHOUT AN INJUNCTION, BECAUSE DEFENDANTS' ACTIONS INTEFERE WITH PLAINTIFFS' RELIGIOUS EXERCISE.

The City has promised to impose civil and criminal liability against Plaintiffs simply for practicing their faith on their property. This irreparable harm is neither remote nor speculative, but actual and imminent. *See, e.g., Stuart Circle Parish*, 946 F. Supp. at 1235. Defendants told Plaintiffs that they are in violation of the Code, and that they will receive a "Notice of Violation" that is unappealable (Herron Decl. ¶¶ 28; 30; 32-33). Defendants gave Plaintiffs a "choice" and told them to hire a lawyer. (Herron Decl. ¶¶ 28, 33). Defendants said that Plaintiffs will have to discontinue their activities or face civil and criminal prosecution. (Herron Decl. ¶ 33). Subjecting Plaintiffs to a choice between abandoning a central tenet of their religion or facing criminal punishment constitutes "irreparable harm" for

---

[4] However, even if Plaintiffs did provide such services, they would be privileged to do so because it is a necessary part of their faith to do so, and has been since the 1700s.

the purposes of injunctive relief. *See, e.g., Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1172; Herron Decl. ¶ 33.

Irreparable injury may be established by "showing violations of [Plaintiffs'] constitutional rights which, if proven at trial, could not be compensated adequately by money damages." *Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The Supreme Court has noted, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (emphasis added).

The Plaintiffs' probability of success on the merits and their irreparable injury are sufficient to warrant injunctive relief. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000).

## IV.
## THE HARM TO PLAINTIFFS ABSENT AN INJUNCTION VASTLY OUTWEIGHS ANY HARDSHIP DEFENDANTS MIGHT FACE IF AN INJUNCTION IS GRANTED.

Plaintiffs are entitled to injunctive relief because the balance of the hardships tips sharply in their favor. While Plaintiffs' strongly-guarded constitutional, religious and statutory rights are at stake, the City will suffer no hardship at all if the requested preliminary injunction is issued. Indeed, the City has waited 14 years to challenge Plaintiffs' activities (Herron Decl. ¶ 24), after being warned 20 years ago by Judge Schwartz not to do so. Defendants' only conceivable interest in taking these actions is to keep "undesirable" people out of a neighborhood, and therefore out of the collective minds of our community. Ironically, the people attending the Wednesday night ministry have the absolute right to be in the neighborhood any time they want, so the City really has no legal interest whatsoever.

The requested injunction does not hamper Defendants in enforcing laws preventing:

- the "accosting of people for the purpose of begging" (PC §647(c));
- "being under the influence of drugs or alcohol in public" (PC §647(f));
- sleeping on the sidewalk or other public places during the day (PC §647(j));
- blocking doorways or access to property (PC §370);
- "loitering on private property" without permission (PC §647(h));
- public urination and defecation (PC §§370, 372, 640(b)(8));
- dealing drugs (PC §186.2(a)(17)).

Finally, wouldn't the public's interest be better advanced if Defendants spent their energies and resources enforcing the laws listed above, instead of upon supporting a bogus charge against a Church that is performing its constitutionally-protected and religiously-mandated obligations? "Granting the temporary restraining order…provides a federal forum for the vindication of federal rights" (*Stuart Circle Parish*, 946 F. Supp. at 1240), which is itself a fundamental public interest worthy of protection, along with the public interest in seeing a particularly needy and vulnerable segment of the community receive ministry, food, and other care that nobody else has been willing or able to provide.

## CONCLUSION

Plaintiffs respectfully ask the Court to issue the requested Injunction, enjoining Defendants from citing or arresting Plaintiffs for violation of Municipal Code §§131.0406, 131.0420, 131.0422, and 141.0412(a)(3), or from initiating any legal action to prevent, hinder, or delay Plaintiffs from attending and participating in Wednesday evening services at Pacific Beach United Methodist Church.

Dated: January 11, 2008

**s/ Robert Scott Dreher**
Attorney for Plaintiffs
E-mail: scott@dreherlawfirm.com

N:\JD\CASES\264\P&A-Preliminary Injunction.doc