MICHAEL J. AGUIRRE, City Attorney
ROBERT J. WALTERS, Deputy (CSBN 140741)
Office of the City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
Telephone: (619) 533-5800
Facsimile: (619) 533-5856

Attorneys for Defendants CITY OF SAN DIEGO, CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT, JERRY SANDERS, SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, MARCIA SAMUELS, PAMELA JONES, and MICHAEL J. AGUIRRE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC BEACH UNIFIED METHODIST CHURCH, a California Religious Corporation; and its Pastor APRIL HERRON,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SAN DIEGO; CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT, Mayor JERRY SANDERS, City Council Members SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, NCC Director MARCIA SAMUELS, NCC Land Development Investigator PAMELA JONES, and City Attorney MICHAEL J. AGUIRRE, in their office capacities; and DOES 1 to 25, inclusive,<br><br>Defendants. | Case No. 07cv2305-LAB-PCL<br><br>**DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**[Fed. R. Civ. P. Rule 12(b)(1), (6)]**<br><br>**Judge:** Hon. Larry Alan Burns<br>**Date:** February 25, 2008<br>**Time:** 10:30 a.m.<br>**Dept.:** Courtroom 9, 2nd Floor<br><br>Complaint filed: December 7, 2007 |

///

///

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| | Table of Authorities | ii |
| I. | INTRODUCTION | 2 |
| II. | LEGAL ARGUMENTS | 3 |
| | A. Standards Applicable To Motions To Dismiss Pursuant to FRAP Rule 12(b)(1), (6) | 3 |
| | (1) Ripeness Considerations | 4 |
| | (2) RLUIPA Considerations | 6 |
| | (3) Declaratory Relief Considerations | 8 |
| | B. Plaintiffs' Action Against the City is Not Ripe for Adjudication | 8 |
| | C. Plaintiffs Claims Against the City and the City Official Are Fatally Defective | 9 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES


| CASES | Page |
|---|---|
| *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) | 5, 8 |
| *Anchorage v. United States*, 980 F.2d 1320 (9th Cir.1992) | 5 |
| *Anderson v. Creighton*, 483 U.S. 635 (1987) | 11 |
| *Association of American Med. Colleges v. United States*, 217 F.3d 770 (9th Cir. 2000) | 5, 8, 9 |
| *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir.1988) | 4, 10 |
| *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955 (2007) | 4 |
| *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) | 12 |
| *Bryant v. Gomez*, 46 F.3d 948 (9th Cir.1995) | 7 |
| *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir.1990) | 7 |
| *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993). | 7 |
| *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) | 10 |
| *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); | 10 |
| *Civil Lib. for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir.2003) | 11 |
| *Cutter v. Wilkinson*, 544 U.S. 709 (2005) | 7 |

**CASES** **Page**

*De Saracho v. Custom Food Machinery, Inc.*, 206 F3d 874 (9th Cir. 2000) 11

*Dresser Indus., Inc. v. United States*, 596 F.2d 1231 (5th Cir.1979) 6

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) 5

*Frederiksen v. Poloway*, 637 F.2d 1147 (7th Cir. 1978) 4

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) 10

*Guru Nanak Sikh Soc. v. County of Sutter*, 456 F.3d 978 (9th Cir.2006) 11

*Haddock v. Bd. of Dental Examiners of Cal.*, 777 F.2d 462 (9th Cir.1985) 4

*Hudson v. Burke*, 617 F.Supp. 1501 (D.C. Ill. 1985) 10

*Hughes v. Rowe*, 449 U.S. 5 (1980) 4

*Jett v. Dallas Independent School District*, 491 U.S. 791 (1989) 10

*Jobs, Training & Services, Inc. v. East Tex. Council*, 50 F.3d 1318 (5th Cir.1995) 5, 9

*Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th 2003) 12

*Kirkpatrick v. City of Los Angeles*, 803 F.2d 485 (9th Cir. 1986) 10

*Lake Country Estates, Inc., v. Tahoe Reg'l Planning Agency*, 440 U.S. 391 (1979) 12

*Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163 (1993) 4

| CASES | Page |
|---|---|
| *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir.2001) | 4 |
| *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) | 5 |
| *Mt. Adams Veneer Co. v. United States*, 896 F.2d 339 (9th Cir. 1989) | 5 |
| *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) | 11 |
| *Monell v. Department of Social Services*, 436 U.S. 658 (1978) | 10 |
| *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005) | 9 |
| *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272 (6th Cir.1997) | 5, 6 |
| *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065 (9th Cir.1983) | 6 |
| *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) | 10 |
| *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir.2004) | 6, 7, 11 |
| *Saucier v. Katz*, 533 U.S. 194 (2001) | 11 |
| *Tari v. Collier County*, 56 F.3d 1533 (11th Cir. 1995) | 9 |
| *Tenney v. Brandhove*, 341 U.S. 367 (1951) | 12 |
| *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707 (1981) | 7 |
| *United States v. Tulare Lake Canal Co.*, 535 F.2d 1093 (9th Cir. 1976) | 4 |
| *Warren v. Fox Family Worldwide, Inc.*, 328 F3d 1136 (9th Cir. 2003) | 3 |

**CASES** **Page**

*Warsoldier v. Woodford*, 418 F3d 989 (9th Cir.2005) 7

*Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985) 6, 9

*Winter v. California Medical Review Inc.*, 900 F.2d 1322 (9th Cir. 1989) 6

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658 (9th Cir.1998) 4

**STATUTES** **Page**

U.S. Const. art. III, §2 5

42 U.S.C. §1983 10

42 U.S.C. § 2000cc-2(b) 6, 7

**OTHER AUTHORITIES** **Page**

Federal Rules of Civil Procedure, Rule 8(a) 3, 4

Federal Rules of Civil Procedure, Rule 12(b)(1) 3

Federal Rules of Civil Procedure, 12(b)(6) 3, 4

# I.

## INTRODUCTION

Defendant CITY OF SAN DIEGO, and Defendants CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT ("NCCD") (collectively "the City"), as well as Defendants Mayor JERRY SANDERS ("Sanders"), City Council Members SCOTT PETERS ("Peters"), KEVIN FAULCONER ("Faulconer"), TONI ATKINS ("Atkins"), TONY YOUNG ("Young"), BRIAN MAIENSHCEIN [sic] ("Maienschein"), DONNA FRYE ("Frye"), JIM MADAFFER ("Madaffer"), BEN HUESO ("Hueso"), NCC Director MARCIA SAMUELS ("Samuels"), NCC Land Development Investigator PAMELA JONES ("Jones"), and City Attorney MICHAEL J. AGUIRRE ("Aguirre")(Sanders, Peters, Faulconer, Atkins, Young, Maienschein, Frye, Madaffer, Hueso, Samuels, Jones and Aguirre are collectively referred to as "City Officials"), hereby submit their joint memorandum of points and authorities in support of their motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), to the Complaint of Plaintiffs PACIFIC BEACH UNIFIED METHODIST CHURCH [sic] ("PBUMC") and APRIL HERRON ("Herron").

Plaintiffs filed their complaint pursuant to 42 U.S.C. section 1983 on December 7, 2007, alleging deprivation of their constitutional rights and causes of action for violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and for declaratory relief. The factual basis of Plaintiffs' complaint stems from an investigation by NCCD regarding Plaintiffs' activities as a church, expressed to be its "Wednesday Night Ministry," which is and was a food and spiritual outreach, including to homeless people, in San Diego. (*Complaint, p. 12, ll. 1-13*). Plaintiffs allege that such activities have occurred for the past 14 years. (*Complaint, p. 13, ll. 8-15*). Defendants were served with Plaintiffs' Complaint on or about December 10, 2007.

As Plaintiffs' complaint discloses, following an initial investigation, which took place on or about October 31, 2007, to determine whether "any laws, ordinances or municipal codes were being violated by Plaintiffs' activities," NCCD preliminarily indicated that a notice of violation may issue based upon certain municipal code violations. (*Complaint, p. 16, ll. 1-28*). However,

Plaintiffs acknowledged that, as of December 4, 2007, NCCD had not issued a notice of violation and the basis for the same was still being reviewed. (*Complaint, p. 17, ll. 1-3*). Indeed, as of the time of the filing of Plaintiffs' complaint, no additional code enforcement action has been taken by the City, and Plaintiffs' complaint discloses no further action otherwise by either the City or the City Officials. Nonetheless, Plaintiffs contend that the City's investigation and the purported ordinances upon which a purported notice of violation may be premised, as well as possible enforcement of the ordinances, is a violation of various United States and California constitutional provisions and a violation of RLUIPA, the gravamen of their claims are pursuant to 42 U.S.C. section 1983, and further provides a basis for declaratory relief. (*Complaint, p. 18, ll. 10-14; p. 19, ll. 6-19; p. 20, ll. 8-15*).

For the reasons that follow, Plaintiffs' complaint, including each cause of action, must be dismissed because the same are not ripe for adjudication by this Court. In addition, Plaintiffs' complaint must be for failure to plead facts in support of any claim particularly as to each of the City Officials as no formal action has yet been taken by any of them, and to which such City Officials possess qualified immunity. Plaintiffs' complaint is based upon possible actions that might take place in the future, but have not yet happened, and to which a panoply of administrative remedies might also be applicable. Thus, in addition to Plaintiffs' complaint being defective as lacking ripeness, Plaintiffs have not properly plead a claim for a constitutional deprivation under any theory against the City or the City Officials, and is subject to dismissal.

## II

## LEGAL ARGUMENTS

### A. Standards Applicable To Motions To Dismiss Pursuant to FRAP Rule 12(b)(1), (6)

A party is entitled pursuant to FRCP Rule 12(b)(1) to move to dismiss an action for lack of subject matter jurisdiction on the basis that the complaint fails to allege grounds for federal subject matter jurisdiction as required by FRCP Rule 8(a) The lack of federal jurisdiction must appear from the "face of the complaint." *Warren v. Fox Family Worldwide, Inc.*, 328 F3d 1136, 1139 (9th Cir. 2003). Rule 12(b)(6) motions to dismiss essentially test whether a cognizable claim has been pleaded in the complaint. Rule 8(a), which states that a plaintiff's pleadings must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir.2001). This is a liberal standard that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff gives the defendant fair notice of the claim and the grounds for making that claim. *Leatherman v. Tarrant County Narcotics Intell & Coord Unit*, 507 U.S. 163, 168 (1993). In addition, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir.1998).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, in order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* Unsupported conclusions of law and sweeping deductions of fact are not to be taken as true. *Frederiksen v. Poloway*, 637 F.2d 1147, 1150, n.1 (7th Cir. 1978); *United States v. Tulare Lake Canal Co.*, 535 F.2d 1093, 1096 (9th Cir. 1976).

Under FRCP Rule 12(b)(6), a complaint should be dismissed for failure to state a claim if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988). *Also see*, *Haddock v. Bd. of Dental Examiners of Cal.*, 777 F.2d 462, 464 (9th Cir.1985); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

(1) <u>Ripeness Considerations</u>

Even if federal question jurisdiction could otherwise be established by pleading a substantial federal constitutional or statutory claim, the claim must also be "ripe for review." Article III of the U.S. Constitution limits the jurisdiction of federal courts to actual cases or

controversies. U.S. Const. art. III, §2. This constitutional provision therefore requires that the Court consider whether Plaintiffs' claims are ripe for judicial consideration. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Ripeness is a doctrine of justiciability that concerns when review is appropriate. Ripeness is similar to standing -- where standing is concerned with who is a proper party to litigate a particular civil action, ripeness is concerned with when a proper party may litigate that action.

An unripe claim is not justiciable and thus may be dismissed without prejudice under FRCP Rule 12(b)(1) for lack of federal question jurisdiction. *Association of American Med. Colleges v. United States*, 217 F.3d 770, 784, n.9 (9th Cir. 2000). In deciding the ripeness issue, the Court must consider (1) whether the issues are fit for judicial decision and (2) the hardship to the parties of withholding court consideration. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). *Also see*, *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997).

Stated differently, agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action. *Anchorage v. United States*, 980 F.2d 1320, 1323 (9th Cir.1992). Courts are to take a pragmatic and flexible view of finality, however. *See*, *Abbott Laboratories*, *supra*, 387 U.S. at 149-50. The core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties, as opposed to a possible or prospective event in the future. *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). The following elements also should be considered: whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms. *See*, *Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989). *Also see*, *Anchorage*, *supra*, 980 F.2d at 1323.

Furthermore, it has been held that an investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action. *See*, *Jobs, Training & Services, Inc. v. East Tex. Council*, 50 F.3d 1318, 1324-25 (5th Cir.1995) (an agency's initiation

of an investigation does not constitute final agency action and judicial intervention at the investigative stage will deter rather than foster effective administration of the statute). *Also see*, *Winter v. California Medical Review Inc.*, 900 F.2d 1322, 1325-26 (9th Cir. 1989) (since the agency's conclusions could change with additional information, claim that the investigation itself represented final agency action lacks merit and court must give the agency an opportunity to formulate a final position."); *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065, 1067 n.6 (9th Cir.1983); *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1235 (5th Cir.1979) (SEC and DOJ investigation is not final agency action).

In addition, as in this case for example, before Plaintiffs bring an as-applied challenge to a zoning ordinance, the zoning authorities must be given an opportunity to "arrive[ ] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County v. Hamilton Bank*, 473 U.S. 172, 191 (1985). A plaintiff's claim also is not ripe if he/she/it does not seek a variance. *Id.* at 193-94. When determining whether this action is one fit for judicial resolution at the pre-enforcement stage, the Court also is required to make "a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Magaw*, *supra*, 132 F.3d at 284. In the absence of a factual record to demonstrate final agency action, particularly when an ordinance or regulation is being challenged on federal constitutional or statutory grounds, the Court is handicapped in determining whether the ordinance or regulation as applied *in fact* constitutes a federal constitutional or statutory violation. In short, any judicial determination would be premature and the underlying policy considerations the doctrine of ripeness seeks to address would go unresolved.

(2) **RLUIPA Considerations**

Plaintiffs' claim under the RLUIPA applies if a "land use regulation," or the government's application of a land use regulation, "substantially burdens a religious adherent's religious exercise in a way not representing the least restrictive means of accomplishing a compelling government interest." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1036 (9th Cir.2004). Plaintiffs must prove, however, that the City's zoning ordinances at

issue here, even though none have yet been applied to even result in a notice of violation, substantially burden the exercise of religion of the church assembly or its invitees. 42 U.S.C. § 2000cc-2(b). "Substantial burden" exists where the governmental entity "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *See, e.g., Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981). The Ninth Circuit has held that a substantial burden on a person's religious freedom is placed on him or her when the government's action "prevent[s] him or her from engaging in conduct or having a religious experience which the faith mandates." *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir.1995).

In other words, the City here would be prohibited from implementing a land use regulation in a manner that imposes a "significantly great" restriction or onus on "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" of a person, including a religious assembly or institution, unless the government can demonstrate that imposition of the burden on that person, assembly, or institution is: (1) in furtherance of a compelling governmental interest, and (2) the least restrictive means of furthering that compelling governmental interest. *San Jose Christian College*, *supra*, 360 F.3d at 1034-1035 (9th Cir. 2004). *Also see*, *Cutter v. Wilkinson*, 544 U.S. 709, 716-17 (2005); *Warsoldier v. Woodford*, 418 F3d 989, 994 (9th Cir.2005).

On the other hand, if the zoning law at issue is of general application and is not targeted at religion, it is subject only to rational basis scrutiny, even though it may have an incidental effect of burdening religion. *San Jose Christian College*, *supra*, 360 F.3d at 1031.[1] A law is one of neutrality and general applicability if it does not aim to "infringe upon or restrict practices because of their religious motivation," and if it does not "in a selective manner impose burdens

---

[1] The Ninth Circuit has concluded, in a challenge closely analogous to the instant case, that rational basis is the appropriate standard. *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir.1990). The *Christian Gospel Church* court considered a church's equal protection challenge to a city zoning ordinance requiring a conditional use permit for churches in a residential area. The church contended that the zoning provision discriminated against churches in general and plaintiff in particular. The court held that "[s]ince the zoning scheme does not implicate a suspect class or a fundamental right, the appropriate question for this equal protection analysis is whether or not the provision is rationally related to a permissible state objective." *Id.* at 1225.

only on conduct motivated by religious belief[.]" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

(3) <u>Declaratory Relief Considerations</u>

It is also well settled that "injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, *supra*, 387 U.S. at 148. Again, the basic purpose of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148-49.

Thus, in evaluating ripeness, courts assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149; *Association of American Med. Colleges*, *supra*, 217 F.3d at 780. Accordingly, even if federal question jurisdiction may be established by pleading a substantial federal constitutional or statutory claim, or for declaratory relief, Plaintiffs' claims must still be ripe for review before this Court should exercise jurisdiction. *Assoc. of Am. Medical Colleges*, *supra*, 217 F.3d at 784.

B. <u>Plaintiffs' Action Against the City is Not Ripe for Adjudication</u>.

At the outset, it should be abundantly clear that <u>no formal, much less final, action has thus far occurred</u>, other than an investigation, which even under the plain language of Plaintiffs' complaint, is on-going. Clearly, there has been no action, formal or final, that would operate to infringe upon any constitutional right of the Plaintiffs, whether premised upon the federal or state constitution, or constitutes a violation of RLUIPA.

As discussed above, the City undertook to investigate Plaintiffs' activities in response to a citizen complaint. Following such initial investigation, although discussions may have taken place indicating that issuance of a notice of violation was possible based upon certain municipal code violations, although the basis for the same was still being reviewed. (*Complaint, p. 16, ll. 1-28*; *p. 17, ll. 1-3*). As of the time of the filing of Plaintiffs' complaint, no additional action had

been taken by the City, and the complaint discloses absolutely no further action by either the City or the City Officials. An unripe claim is not "justiciable" and may be dismissed without prejudice under FRCP Rule 12(b)(1) for lack of federal question jurisdiction. *Association of American Med. Colleges v. United States*, *supra*, 217 F.3d at 784, n.9.

It has been held that an investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action. *See, e.g.*, *Jobs, Training & Services*, *supra*, 50 F.3d at 1324-25. *Cf*, *Tari v. Collier County*, 56 F.3d 1533, 1536 (11th Cir. 1995) (holding that merely issuing Notice of Violation did not constitute a final decision). As the United States Supreme Court has held, failure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe. *Williamson County*, *supra*, 473 U.S. at 190.[2] Likewise, the City has not had sufficient opportunity at the administrative level to determine what action, if any, is to be taken further. Plaintiffs appear to fear the worst, however, and claim without any basis in fact that it is being singled out. Nonetheless, since no formal, much less final agency action has been taken against Plaintiffs, their entire complaint is not ripe for judicial consideration, and this Court should dismiss the same without prejudice.

C. **Plaintiffs Claims Against the City and the City Official Are Fatally Defective.**

Plaintiffs' complaint names the Mayor, each of members of the City Council, the City Attorney, and two NCCD employees. Other than allegations of actions and/or representations made by Jones of the ongoing investigation, Plaintiffs allege no facts whatsoever indicating what if anything the other City Officials did that represents a constitutional violation or RLUIPA

---

[2] *Also see*, *Murphy v. New Milford Zoning Commission*, 402 F.3d 342 (2d Cir. 2005), the plaintiffs hosted prayer meetings in their single family home and were issued a cease and desist order for violating a single-family zoning regulation. *Id.* at 345. The plaintiffs did not appeal the cease and desist order to the Zoning Board of Appeal to seek a variance. *Id.* Instead, the plaintiffs filed suit in federal court, arguing, *inter alia*, a violation of the RLUIPA. *Id.* at 346. The district court issued an injunction and the case was appealed. *Id.* The Second Circuit found that until the variance and appeals process was completed, the dispute remained unripe. *Id.* at 354. Additionally, the court held that (1) "requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record"; (2) "only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel;" (3) a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes"; (4) that "requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible"; and (5) that "federal principles also buttress the finality requirement." *Id.* at 348.

violation. Pursuant to FRAP Rule 12(b)(6), there is a complete "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*, *supra*, 901 F.2d at 699.

Assuming that the gravamen of Plaintiffs' complaint is that the City is liable for the actions of its officials and employees, a local government cannot be found liable under section 1983 based on a theory of *respondeat superior* alone. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). In order to maintain a section 1983 action against a governmental entity, Plaintiffs must allege and present evidence that the allegedly unconstitutional activities of the public or official or employee were pursuant to "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers." *Id.* at 690 (emphasis added). *Also see*, *Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 491 (9th Cir. 1986).

It is also well established that such a plan or policy may not be proved through reference to a single unconstitutional activity unless "proof of the incident includes proof that it was caused by an existing, unconstitutional (municipal) policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To do so would essentially impose liability upon a municipality simply because the entity hired one "bad apple." *Id.* at 821. *Also see*, *Hudson v. Burke*, 617 F.Supp. 1501, 1507 (D.C. Ill. 1985).

Under section 1983, a plaintiff can sustain a claim against a municipality in the following three ways. First, he "may prove that a city employee committed a constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992); *Jett v. Dallas Independent School District*, 491 U.S. 791, 737 (1989); *Monell*, *supra*, 436 U.S. at 694. Second, he may demonstrate that the constitutional offender was an official who possessed "final policy-making authority" and that the action of which he complained thus qualified as an official government policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Gillette*, 979 F.2d at 1346. Third, he may show than an official with final policy-making authority endorsed the unconstitutional conduct of the employee and the basis for the actions taken. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988); *Gillette*, *supra*, 979 F.2d at 1346-47.

Plaintiffs have not alleged any facts that the City Officials, individually or collectively, violated his constitutional rights due to application or administration of an unconstitutional policy, custom, or practice. As a consequence, the first claim for relief should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This result also lies for Plaintiffs' RLUIPA claims. *See*, *Guru Nanak Sikh Soc. v. County of Sutter*, 456 F.3d 978, 988-89 (9th Cir.2006) (land use regulation imposes a substantial burden on religious exercise when it is oppressive to a significantly great extent and imposes a significantly great restriction or onus upon such exercise); *San Jose Christian College*, *supra*, 360 F.3d at 1034.[3] Plaintiffs further claim that the substantial burden in this case is their inability to use its property to carry on a mission of Christian outreach to the poor and homeless. However, Plaintiffs are simply averse to being subject to the applicable ordinances. The ordinances impose no restriction whatsoever on Plaintiffs' religious exercise as such. Even if Plaintiffs are required to apply for a permit, Plaintiffs allege no facts that suggest that their application would be discriminatorily denied or conditioned. *San Jose Christian College*, *supra*, 360 F.3d at 1035.

Furthermore, for a section 1983 claim to stand against the City Officials, Plaintiffs also must demonstrate that the contours of the rights at issue here (constitutional and RLUIPA-derived) were sufficiently clear that a reasonable official would understand that what he or she was doing violated those rights. *See*, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The question is "whether it would be clear to a reasonable [City official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Furthermore, where the complaint reveals on its face that the defendant lacks capacity to be sued, a Rule 12(b)(6) motion will lie. *See*, *De Saracho v. Custom Food Machinery, Inc.*, 206 F3d 874, 878 (9th Cir. 2000). For example, assuming *arguendo* that the gravamen of Plaintiffs'

---

[3] *Also see*, *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004), *cert. den.*, 543 U.S. 1146 (2005) (determining that "substantial burden" on religious exercise is more than an inconvenience and is "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly," that is, pressure to forgo religious precepts or pressure that mandates religious conduct); *Civil Lib. for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir.2003), *cert. den.*, 541 U.S. 1096 (2004) (holding that, in context of RLUIPA's broad definition of religious exercise, a land use regulation that imposes a substantial burden on religious exercise is one that renders that exercise "effectively impracticable").

complaint was that the ordinances claimed to be at issue were constitutionally suspect, the Supreme Court has long held that state and local legislators are absolutely immune from liability under §1983 for their legislative acts. *See*, *Lake Country Estates, Inc., v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1979) (local); *Tenney v. Brandhove*, 341 U.S. 367, 376-77 (1951) (state). They are immune not for the sake of private indulgence, but so they may freely discharge their public duties as legislators. *Tenney*, *supra*, 341 U.S. at 377. Thus, the immunity attaches only to actions taken "in the sphere of legitimate legislative activity." *Id.* at 376. The Supreme Court has also extended this immunity to local legislators, holding them "absolutely immune from suit under §1983 for their legislative activities." *See*, *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). *Accord*, *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th 2003). The City Officials are therefore immune from liability related to the validity of the ordinance.

## III

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion to dismiss Plaintiffs' complaint should be granted. Plaintiffs' complaint is not ripe for judicial review and further fails to allege any facts implicating City or the City Officials with conduct violating Plaintiffs' either constitutional rights or their rights under RLUIPA. The City Officials further possess immunity from suit under the facts presently alleged by Plaintiffs.

Respectfully submitted,

Dated: January 15, 2008

MICHAEL J. AGUIRRE, City Attorney

By /S/
ROBERT J. WALTERS
Deputy City Attorney

Attorneys for Defendants CITY OF SAN DIEGO, CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT, JERRY SANDERS, SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, MARCIA SAMUELS, PAMELA JONES, and MICHAEL J. AGUIRRE