1 | MICHAEL J. AGUIRRE, City Attorney
ROBERT J. WALTERS, Deputy (CSBN 140741)
2 |    Office of the City Attorney
   1200 Third Avenue, Suite 1100
3 |    San Diego, California 92101-4100
   Telephone: (619) 533-5800
4 |    Facsimile: (619) 533-5856
5 |
6 | Attorneys for Defendants CITY OF SAN DIEGO,
CITY OF SAN DIEGO NEIGHBORHOOD CODE
7 | COMPLIANCE DEPARTMENT, JERRY SANDERS,
SCOTT PETERS, KEVIN FAULCONER, TONI
8 | ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN,
DONNA FRYE, JIM MADAFFER, BEN HUESO,
9 | MARCIA SAMUELS, PAMELA JONES, and
MICHAEL J. AGUIRRE
10 |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC BEACH UNIFIED METHODIST CHURCH, a California Religious Corporation; and its Pastor APRIL HERRON, | ) Case No. 07cv2305-LAB-PCL ) ) |
| Plaintiffs, | ) **DEFENDANTS' JOINT OPPOSITION** ) **TO PLAINTIFFS' MOTION FOR** ) **PRELIMINARY INJUNCTION;** |
| v. | ) **DECLARATION OF PAMELA D.** ) **JONES IN SUPPORT THEREOF;** ) **DECLARATION OF ROBERT J.** |
| THE CITY OF SAN DIEGO; CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT, Mayor JERRY SANDERS, City Council Members SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, NCC Director MARCIA SAMUELS, NCC Land Development Investigator PAMELA JONES, and City Attorney MICHAEL J. AGUIRRE, in their office capacities; and DOES 1 to 25, inclusive, | ) **WALTERS IN SUPPORT THEREOF;** ) **AND REQUEST FOR JUDICIAL** ) **NOTICE IN SUPPORT THEREOF** ) ) **[FRCP Rule 56]** ) ) ) **Judge:**   Hon. Larry Alan Burns ) **Date:**   February 25, 2008 ) **Time:**   10:30 a.m. ) **Dept.:**   Courtroom 9, 2nd Floor ) ) ) |
| Defendants. | ) ) Complaint filed:   December 7, 2007 ) |

/ / /

/ / /

1

# TABLE OF CONTENTS

2

3                                                                                 Page

4        Table of Authorities                                                            ii

5    I.    INTRODUCTION                                                               1

6    II.   FACTUAL AND PROCEDURAL BACKGROUND                                         1

7    III.  LEGAL ARGUMENTS                                                           2

8          A.    Standards Applicable To Motions for Preliminary Injunctions         2

9          B.    Plaintiffs' Action Presently Does Not Meet the Constitutional       4
                 Standard for Ripeness
10
           C.    Plaintiffs Cannot Show that They Are Likely to Prevail on the       6
11               Merits

12               1.    The City's Investigation of Plaintiffs Does Not Constitute    6
                       A First Amendment Free Exercise Clause Violation Or
13                     Unconstitutional Discrimination.

14               2.    The City Defendants Have Not Violated RLUIPA.                  11

15         D.    Plaintiffs Have Not Suffered and Will Not Suffer Irreparable        13
                 Injury
16
     IV.   CONCLUSION                                                               15
17
18

19

20

21

22

23

24

25

26
                                                    i

1

## TABLE OF AUTHORITIES

2

3  CASES                                                                                              Page

4  *Arcamuzi v. Continental Air Lines, Inc.,*                                                            3
       819 F2d 935 (9th Cir. 1987)
5

   *American Family Ass'n, Inc. v. City and County of San Francisco,*                                   7
6      277 F.3d 1114 (9th Cir. 2002)

7  *Anchorage v. United States,*                                                                         5
       980 F.2d 1320 (9th Cir.1992)
8

   *Association of American Med. Colleges v. United States,*                                            4
9      217 F.3d 770 (9th Cir. 2000)

10 *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,*                                   3
       179 F3d 725 (9th Cir. 1999)
11

12 *Bryant v. Gomez,*                                                                                   11
       46 F.3d 948 (9th Cir.1995)

13 *Caribbean Marine Serv. Co., Inc. v. Baldridge,*                                                      3
       844 F2d 668 (9th Cir. 1988)
14

15 *Chalk v. U.S. Dist. Court,*                                                                          2
       840 F.2d 701 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

16 *Christian Gospel Church, Inc. v. City and County of San Francisco,*                                10
       896 F.2d 1221 (9th Cir.1990)
17

18 *Church v. City of Huntsville,*                                                                       3
       30 F.3d 1332 (11th Cir. 1994)
19

   *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*                                           7
20     508 U.S. 520 (1993).

21 *City of Los Angeles v. Lyons,*                                                                       3
       461 U.S. 95 (1983)
22

   *Civil Lib. for Urban Believers v. City of Chicago,*                                                 11
23     342 F.3d 752 (7th Cir.2003)

24 *Cutter v. Wilkinson,*                                                                               11
       544 U.S. 709 (2005)
25

   *Department of Parks & Rec. v. Bazaar Del Mundo Inc.,*                                                3
26     448 F3d 1118 (9th Cir. 2006)

ii

CASES                                                                      Page

*Elk Grove Unified Sch. Dist. v. Newdow,*                                      6
        542 U.S. 1 (2004)

*Employment Division, Dep't of Human Resources v. Smith,*                     7
        494 U.S. 872 (1990)

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*        4
        762 F2d 464 (5th Cir. 1985)

*FTC v. H.N. Singer, Inc.,*                                                   4
        668 F2d 1107 (9th Cir. 1982)

*Franklin v. Massachusetts,*                                                  5
        505 U.S. 788 (1992)

*Freeman v. Arpaio,*                                                          6
        125 F.3d 732 (9th Cir.1997)

*Guam v. Guerrero,*                                                           7
        290 F.3d 1210 (9th Cir.2002)

*Grace United Methodist Church v. City of Cheyenne,*                         14
        451 F.3d 643 (10th Cir. 2006)

*Guru Nanak Sikh Soc. v. County of Sutter,*                                   6
        456 F.3d 978 (9th Cir.2006)

*Jobs, Training & Services, Inc. v. East Tex. Council,*                       5
        50 F.3d 1318 (5th Cir.1995)

*Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of*        14
*Lakewood,*
        699 F.2d 303, 306-07 (6th Cir.1983)

*Lujan v. Defenders of Wildlife,*                                            4
        504 U.S. 555 (1992)

*Mt. Adams Veneer Co. v. United States,*                                     5
        896 F.2d 339 (9th Cir. 1989)

*Matter of Capital City Rescue Mission v. City of Albany Bd. of Zoning Appeals,*   12
        235 A.D.2d 815, 652 N.Y.S.2d 388 (1997)

*Mazurek v. Armstrong,*                                                     3, 6
        520 U.S. 968 (1997)

iii

| CASES | Page |
|---|---|
| *Messiah Baptist Church v. County of Jefferson,*<br>859 F.2d 820 (10th Cir.1988) | 14 |
| *Midgett v. Tri–County Metro. Transp. Dist. of Oregon,*<br>254 F3d 846 (9th Cir. 2001) | 3 |
| *Midrash Sephardi, Inc. v. Town of Surfside,*<br>366 F.3d 1214 (11th Cir. 2004) | 11 |
| *Miller v. Reed,*<br>176 F.3d 1202 (9th Cir.1999) | 7 |
| *Nike, Inc. v. McCarthy,*<br>379 F.3d 576 (9th Cir. 2004) | 3 |
| *O'Brien, Inc. v. Sec. & Exch. Comm'n,*<br>704 F.2d 1065 (9th Cir.1983) | 5 |
| *Republic of Philippines v. Marcos,*<br>862 F2d 1355 (9th Cir. 1988) | 3 |
| *Rizzo v. Goode,*<br>423 U.S. 362 (1976) | 3 |
| *Rodde v. Bonta,*<br>357 F.3d 988 (9th Cir.2004) | 2 |
| *San Jose Christian College v. City of Morgan Hill,*<br>360 F.3d 1024 (9th Cir.2004) | 7, 11, 12 |
| *Savoie v. Merchants Bank,*<br>84 F3d 52 (2nd Cir. 1996) | 4 |
| *Sherbert v. Verner,*<br>374 U.S. 398 (1963) | 6 |
| *Slevin v. Long Island Jewish Med. Ctr.,*<br>66 Misc.2d 312, 319 N.Y.S.2d 937, 945-946 (1971) | 12 |
| *Thomas v. Review Bd. of Indiana Employment Sec. Div.,*<br>450 U.S. 707 (1981) | 11 |
| *Warsoldier v. Woodford,*<br>418 F3d 989 (9th Cir.2005) | 3, 11, 13 |

**CASES**                                                                      Page

*Western Presbyterian Church v. Board of Zoning Adjustment of District of*      12
*Columbia,*
    862 F.Supp. 538 (D.D.C. 1994)

*Williamson County v. Hamilton Bank,*                                           5
    473 U.S. 172 (1985)

*Winter v. California Medical Review Inc.,*                                      5
    900 F.2d 1322 (9th Cir. 1989)


**STATUTES**                                                                    Page

U.S. Const. art. III, §2                                                        4

42 U.S.C. §1983                                                                 2

42 U.S.C. § 2000cc-2                                                            11

42 U.S.C. § 2000cc-5                                                            11


**OTHER AUTHORITIES**                                                           Page

Federal Rules of Civil Procedure, Rule 65                                       4

Federal Rules of Civil Procedure, Rule 12(b)(1)                                 4

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS'              Case No. 07cv2305-LAB-PCL
MOTION FOR PRELIMINARY INJUNCTION

I.

## INTRODUCTION

Defendant CITY OF SAN DIEGO, and Defendants CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT ("NCCD") (collectively "the City"), as well as Defendants Mayor JERRY SANDERS ("Sanders"), City Council Members SCOTT PETERS ("Peters"), KEVIN FAULCONER ("Faulconer"), TONI ATKINS ("Atkins"), TONY YOUNG ("Young"), BRIAN MAIENSHCEIN [sic] ("Maienschein"), DONNA FRYE ("Frye"), JIM MADAFFER ("Madaffer"), BEN HUESO ("Hueso"), NCC Director MARCIA SAMUELS ("Samuels"), NCC Land Development Investigator PAMELA JONES ("Jones"), and City Attorney MICHAEL J. AGUIRRE ("Aguirre")(Sanders, Peters, Faulconer, Atkins, Young, Maienschein, Frye, Madaffer, Hueso, Samuels, Jones and Aguirre are collectively referred to as "City Officials"), hereby submit their joint opposition to the motion for preliminary injunction of Plaintiffs PACIFIC BEACH UNIFIED METHODIST CHURCH [sic] ("PBUMC") and APRIL HERRON ("Herron").

This motion should further be considered in light of the City Defendants' joint motion to dismiss (also scheduled to be heard at the same time as this motion) on grounds, *inter alia*, pursuant to Federal Rules of Civil Procedure ("FRAP"), Rule 12(b)(1), that Plaintiffs' complaint is not ripe for judicial consideration. In addition, and for the reasons expressed below, Plaintiffs do not meet the threshold requirements for a preliminary injunction to be issued by this Court. Plaintiffs can neither demonstrate a likelihood of success on the merits nor irreparable harm. Accordingly, Plaintiffs' motion for preliminary injunction should be denied.

II

## FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2007, in response to a complaint, NCCD performed an investigation by regarding Plaintiffs' activities as a church, expressed to be its "Wednesday Night Ministry," which is and was a food and spiritual outreach, including to homeless people, in San Diego. (*Complaint, p. 12, ll. 1-13*). Plaintiffs allege that such activities have occurred for the past 14 years. (*Complaint, p. 13, ll. 8-15*). Following an initial investigation, NCCD preliminarily

1

1  indicated that a notice of violation may issue based upon certain municipal code violations.

2  (*Complaint, p. 16, ll. 1-28*); Declaration of Pamela D. Jones In Support of Defendants' Joint

3  Opposition to Plaintiffs' Motion for Preliminary Injunction ("Jones Declaration"), ¶¶ 2-4.

4  However, as of the filing of Plaintiffs' instant motion and this opposition, NCCD had not issued

5  a notice of violation and the basis for the same was still being reviewed. (*Complaint, p. 17, ll. 1-*

6  *3*); Jones Declaration, ¶¶ 7, 10.

7      On December 7, 2007, Plaintiffs filed their complaint pursuant to 42 U.S.C. §1983

8  alleging causes of action for deprivation of their constitutional rights, violation of the Religious

9  Land Use and Institutionalized Persons Act ("RLUIPA") and for declaratory relief. As of the

10  time of the filing of Plaintiffs' complaint, however, including through the filing of this

11  opposition, no additional action has been taken by the City beyond the investigation described

12  above. Other than further follow-up in the investigation by NCCD and Defendant Jones, no

13  action has been taken by any other of the named City Officials. Nonetheless, Plaintiffs contend

14  that the City's investigation and the purported ordinances upon which a purported notice of

15  violation would be premised, as well as possible enforcement of the ordinances, is a violation of

16  various United States and California constitutional provisions and a violation of RLUIPA, the

17  gravamen of their claims are pursuant to 42 U.S.C. section 1983, and further provides a basis for

18  declaratory relief. (*Complaint, p. 18, ll. 10-14; p. 19, ll. 6-19; p. 20, ll. 8-15*).

19                                   III

20                        LEGAL ARGUMENTS

21  A.    Standards Applicable To Motions for Preliminary Injunctions

22      The basic function of a preliminary injunction is to preserve the *status quo* pending a

23  determination of the action on the merits. *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th

24  Cir.1988). To prevail on a motion for preliminary injunction, Plaintiffs must show (1) a strong

25  likelihood of success on the merits, (2) the possibility of irreparable injury if preliminary relief is

26  not granted, (3) a balance of hardships favoring the plaintiff, and (4) in certain cases,

27  advancement of the public interest. *See, Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir.2004).

28  Alternatively, injunctive relief can be granted if the plaintiffs merely "demonstrate ... a

                                        2

1  combination of probable success on the merits and the possibility of irreparable injury." *Id.*

2  Because a preliminary injunction is an extraordinary remedy, the movant must carry its burden

3  of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

4  Furthermore, Plaintiffs also must satisfy the general equitable requirements above by showing

5  that legal remedies are "inadequate." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F2d 935, 937

6  (9th Cir. 1987).

7        These two formulations represent two points on a sliding scale in which the required

8  degree of irreparable harm increases as the probability of success decreases – if Plaintiffs cannot

9  show a chance of success on the merits, the injunction should not issue.  Plaintiffs <u>must</u>

10  demonstrate a fair chance of success on the merits, or questions serious enough to require

11  litigation. *Department of Parks & Rec. v. Bazaar Del Mundo Inc.*, 448 F3d 1118, 1123 (9th Cir.

12  2006). "Serious questions" have been interpreted to mean questions that involve a fair chance of

13  success on the merits that cannot be resolved at the hearing on the injunction, "and as to which

14  the court perceives the need to preserve the *status quo* lest one side prevent resolution of the

15  questions or execution of any judgment by altering the *status quo*." *Bay Area Addiction*

16  *Research & Treatment, Inc. v. City of Antioch*, 179 F3d 725, 732 (9th Cir. 1999); *Republic of*

17  *Philippines v. Marcos*, 862 F2d 1355, 1362 (9th Cir. 1988).  *Also see*, *Warsoldier v. Woodford*,

18  418 F.3d 989, 994 (9th Cir. 2005); *Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004).

19        Moreover, for the irreparable harm prong, Plaintiffs must demonstrate <u>immediate</u>

20  threatened harm. *Caribbean Marine Serv. Co., Inc. v. Baldridge*, 844 F2d 668, 674 (9th Cir.

21  1988). Establishing a <u>risk</u> of irreparable harm in the <u>indefinite</u> future is not enough, however.

22  The harm must be shown to be imminent. *Midgett v. Tri–County Metro. Transp. Dist. of*

23  *Oregon*, 254 F3d 846, 850-851 (9th Cir. 2001); *Church v. City of Huntsville*, 30 F.3d 1332, 1337

24  (11th Cir. 1994).  To obtain injunctive relief against governmental activity, a <u>persistent</u> pattern of

25  misconduct violative of Plaintiffs' rights must be shown.  Even merely showing a "relatively few

26  instances of violations by [defendants], without any showing of a deliberate policy on behalf of

27  the named defendants, [does] not provide a basis for equitable relief." *City of Los Angeles v.*

28  *Lyons*, 461 U.S. 95, 104 (1983); *Rizzo v. Goode*, 423 U.S. 362, 378–379 (1976).

3

1    Furthermore, a party seeking injunctive relief in federal court must first establish the

2    Court's subject matter jurisdiction. Rule 65 of the Federal Rules of Civil Procedure ("FRCP")

3    merely provides the procedure for obtaining injunctive relief; and it is not an independent basis

4    for federal jurisdiction. The substantive basis and the jurisdictional authority for use of this

5    procedure must be sought elsewhere. *FTC v. H.N. Singer, Inc.*, 668 F2d 1107, 1109 (9th Cir.

6    1982). When defendant raises a jurisdictional challenge, a preliminary injunction should not be

7    granted unless Plaintiff also establishes a reasonable probability that jurisdiction exists. Stated

8    differently, Plaintiffs also are required to adequately establish that there is at least a reasonable

9    probability of ultimate success upon the question of jurisdiction when the action is tried on the

10    merits. *See, e.g.*, *Savoie v. Merchants Bank*, 84 F3d 52, 57 (2nd Cir. 1996); *Enterprise Int'l, Inc.*

11    *v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F2d 464, 471 (5th Cir. 1985).

12    The City Defendants have filed a motion to dismiss on the ground that this Court lacks

13    subject matter jurisdiction because the instant action is not ripe for judicial consideration.

14    Article III of the U.S. Constitution limits the jurisdiction of federal courts to actual cases or

15    controversies. U.S. Const. art. III, §2. This constitutional provision therefore requires that this

16    Court consider whether Plaintiffs' claims are ripe for review. *Lujan v. Defenders of Wildlife*, 504

17    U.S. 555, 559-60 (1992). An unripe claim is not justiciable and thus may be dismissed without

18    prejudice under FRCP Rule 12(b)(1) for lack of federal question jurisdiction. *Association of*

19    *American Med. Colleges v. United States*, 217 F.3d 770, 784, n.9 (9th Cir. 2000).

20    B.    **Plaintiffs' Action Presently Does Not Meet the Constitutional Standard for Ripeness**

21    Ignoring the obvious lack of urgency from the time that Plaintiffs initiated this action to

22    the time they filed their motion for preliminary injunction under the pretext that the City would

23    interrupt their homeless ministry, Plaintiffs' action should be taken in context. This case is

24    presented in the context of a pending investigation by NCCD, which has not yet become final.

25    As noted in Plaintiffs' complaint, their activities came to light as the result of a complaint

26    to the NCCD, which it investigated. Following such initial investigation, although discussions

27    may have taken place that issuance of a notice of violation was anticipated based upon certain

28    municipal code violations, the basis for the same continued to be reviewed. (*Complaint, p. 16, ll.*

4

1  *1-28; p. 17, ll. 1-3*; Jones Declaration, ¶¶ 7, 10).  As indicated above, no additional action has

2  been taken by the City or the City Officials.  The investigation has not culminated in any further

3  action, much less final agency action.

4  　　　The core question is whether the City has completed its decision-making process, and

5  whether the result of that process is one that will directly affect the Plaintiffs, as opposed to a

6  possible or prospective event in the future.  *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

7  The following elements also should be considered: whether the administrative action is a

8  definitive statement of an agency's position; whether the action has a direct and immediate effect

9  on the complaining parties; whether the action has the status of law; and whether the action

10  requires immediate compliance with its terms.  *See, Mt. Adams Veneer Co. v. United States*, 896

11  F.2d 339, 343 (9th Cir. 1989).  *Also see, Anchorage, supra*, 980 F.2d at 1323.

12  　　　Furthermore, it has been held that an investigation, even one conducted with an eye to

13  enforcement, is quintessentially non-final as a form of agency action.  *See, Jobs, Training &*

14  *Services, Inc. v. East Tex. Council*, 50 F.3d 1318, 1324-25 (5th Cir.1995) (an agency's initiation

15  of an investigation does not constitute final agency action and judicial intervention at the

16  investigative stage will deter rather than foster effective administration of the statute).  *Also see,*

17  *Winter v. California Medical Review Inc.*, 900 F.2d 1322, 1325-26 (9th Cir. 1989) (since the

18  agency's conclusions could change with additional information, claim that the investigation itself

19  represented final agency action lacks merit and court must give the agency an opportunity to

20  formulate a final position.); *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065, 1067 n.6 (9th

21  Cir.1983) (SEC investigation is not final agency action).

22  　　　In addition, as in this case, before Plaintiffs bring an as-applied challenge to a zoning

23  ordinance, the zoning authorities also must be given an opportunity to "arrive[ ] at a final,

24  definitive position regarding how it will apply the regulations at issue to the particular land in

25  question." *Williamson County v. Hamilton Bank*, 473 U.S. 172, 191 (1985).  A plaintiff's claim

26  also is not ripe if he/she/it does not seek a variance or other administrative relief. *Id*. at 193-94.

27  Nonetheless, in this case, the present posture of the City's enforcement action has not reached

28  any final decision.

5

1    Accordingly, since this action is not ripe for judicial consideration, Plaintiffs cannot

2  presently show that there will be a jurisdictional basis for this Court to consider their complaint

3  and their motion for preliminary injunction must be denied.

4  C.    **Plaintiffs Cannot Show that They Are Likely to Prevail on the Merits**

5    Plaintiffs' claims are premised under various federal constitutional provisions, most

6  notably the Free Exercise Clause of the First Amendment, and also under RLUIPA. Assuming

7  *arguendo* that even if Plaintiffs' claims were otherwise ripe for review, they cannot show that

8  they are likely to prevail. This is particularly so since Plaintiffs also must carry their burden of

9  persuasion by a "clear showing." *Mazurek v. Armstrong*, *supra*, 520 U.S. at 972.

10
11    1.    **The City's Investigation of Plaintiffs Does Not Constitute A First Amendment Free Exercise Clause Violation Or Unconstitutional Discrimination.**

12    The Free Exercise Clause of the First Amendment provides that "Congress shall make no

13  law respecting an establishment of religion, or prohibiting the free exercise thereof." The

14  provisions of the First Amendment also apply to state and local government regulation. *See, e.g.,*

15  *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006)

16  (*citing, Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 8 n.4 (2004).

17    To prove a free exercise violation, Plaintiffs must demonstrate the City Defendants

18  burdened the practice of their sincerely held religious beliefs "by preventing [them] from

19  engaging in conduct mandated by [their] faith, without any justification reasonably related to

20  legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir.1997). To rise

21  to the level of a constitutional violation, the interference must be "more than an inconvenience;

22  the burden must be substantial and an interference with a tenet or belief that is central to

23  religious doctrine." *Id.* at 737.

24    Prior to 1990, in the context of local government ordinances or regulations, such as

25  zoning provisions that are at issue in this case, the United States Supreme Court analyzed Free

26  Exercise Clause claims by determining whether the challenged statute or regulation imposed a

27  substantial burden on religious exercise; and if so, the regulation passed constitutional muster

28  only if it furthered a "compelling governmental interest." *See, e.g., Sherbert v. Verner*, 374 U.S.

6

1  398, 403-08 (1963). In 1990, however, the Supreme Court announced the current rule and held

2  that government enforcement of "valid and neutral law[s] of general applicability" that

3  incidentally restrict religious exercise did not violate the Free Exercise Clause even if they

4  burden religious exercise. *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S.

5  872, 879-82 (1990). The *Smith* Court also rejected a requirement of a compelling interest when

6  the burden on religion is substantial. *Id.* at 883-84. *Also see, Guam v. Guerrero*, 290 F.3d 1210,

7  1215 (9th Cir.2002) (neutral, generally applicable laws may be applied to religious practices,

8  even when not supported by a compelling government interest); *Miller v. Reed*, 176 F.3d 1202,

9  1206 (9th Cir.1999) (rational basis test applies to determine whether a neutral law of general

10  applicability violates the free exercise of religion even though the law incidentally burdens a

11  particular religious belief or practice).

12      A law is one of neutrality and general applicability if it does not aim to "infringe upon or

13  restrict practices because of their religious motivation," and if it does not "in a selective manner

14  impose burdens only on conduct motivated by religious belief[.]" *San Jose Christian College v.*

15  *City of Morgan Hill*, 360 F.3d 1024, 1031 -1032 (9th Cir. 2004) (*citing, Church of the Lukumi*

16  *Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993). Accordingly, "a free exercise

17  violation hinges on showing that the challenged law is either not neutral or not generally

18  applicable." *American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114,

19  1123 (9th Cir. 2002), *cert. denied*, 537 U.S. 886 (2002). The right of free exercise does not

20  relieve an individual of the obligation to comply with a valid and neutral law of general

21  applicability on the ground that the law proscribes (or prescribes) conduct that his religion

22  prescribes (or proscribes)." *Employment Div. v. Smith, supra*, 494 U.S. at 879.

23      The factual basis of Plaintiffs' complaint, however, stems from an investigation by

24  NCCD regarding Plaintiffs' activities as a church, expressed to be its "Wednesday Night

25  Ministry," a food and spiritual outreach, in part directed to homeless people, in San Diego, which

26  has taken place over the past 14 years. (*Complaint, p. 12, ll. 1-13; p. 13, ll. 8-15*). However,

27  Plaintiffs' complaint discloses no facts that remotely suggest that the ordinances at issue, even

28  though none have thus far been applied in any enforcement action, represent anything more than

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS'        Case No. 07cv2305-LAB-PCL
MOTION FOR PRELIMINARY INJUNCTION

1   a neutral law of general applicability.  The ordinance and its application by the City fall within

2   the parameters neutral law of general applicability.  The factual record developed thus far

3   reflects that the City's ordinance applies throughout the entire City, and there is not even a hint

4   that Plaintiffs were targeted on the basis of religion for varying treatment in the City's

5   application of the ordinance, including an investigation for a violation thereof.

6         There is no evidence that Plaintiffs have been prevented from engaging their "Wednesday

7   Night Ministry."  Churches are not immune from routine investigations.  Thus, to the extent that

8   there is an incidental burden upon Plaintiffs' free exercise of religion, the City's ordinance or

9   investigation, and without additional facts to disclose how the City's ordinances would be

10  enforced against Plaintiffs, if at all, are not violative of the First Amendment under current law.

11  As respects their own activities, Plaintiffs focus on the portion of the homeless outreach relating

12  to feeding the homeless.  However, Plaintiffs gloss over accompanying medical (including

13  accupunture) and dental services, as well as legal services, are offered and provided.  Indeed, the

14  Pacific Beach United Methodist Church ("PBUMC") website (http://www.pbumc.org/)

15  advertises these services.[1]  Such activities have not been construed as the exercise of religion

16  under federal constitutional analysis and Plaintiffs have provided no authority to the contrary.

17        In addition, Plaintiffs also have "partnered" with another nonprofit corporation whose

18  own mission is to provide various other services to the homeless.[2]  The Welcome Door

19

20    [1]    In pertinent part: "Every Wednesday evening …, a free meal is served to hungry and
homeless people. The food is donated from various sources, and volunteers set up, serve, and clean up.
21  The number of guests ranges from 75 to 150 people (men, women, and children). [¶]  In addition to the
meal, PBUMC is host to free medical and dental clinics operated by UCSD. Acupuncture is offered by
22  the Pacific College of Oriental Medicine. Guests sign up to see a practitioner as they enter the social hall
for the meal. [¶]  Our goal is for our guests to experience caring community, to eat a nutritious meal, and
23  to tend to their health needs.  * * *  [¶]"  Source: http://www.pbumc.org/outreach.htm.  A true and
correct copy of the PBUMC website's printed pages are attached as **Exhibit B** to the Request for Judical
24  Notice in Support of Defendants' Joint Opposition to Plaintiffs' Motion For Preliminary Injunction
("Defendants' Request for Judicial Notice"), also referenced in the supporting Declaration of Robert
25  Walters ("Walters Declaration").

26    [2]    A partnership has also been established with the Welcome Door Foundation. The Welcome
Door Foundation is a San Diego-based 501.C.3 non-profit organization, using a brand new approach to
27  provide healing for the homeless in the Pacific Beach area and its surrounding communities. The
Welcome Door Foundation is organized to offer a unique, compassionate environment to the chronically
28  homeless, one which promotes self-healing and provides the basis for learning responsibility, gaining
skills, and pursuing new beginnings. **Exhibit B** to Defendants' Request for Judicial Notice.

8

1   Foundation website (http://www.thewelcomedoor.org/) reveals program information that mirrors

2   the ministry or outreach description on the PBUMC website.[3]  However, the Welcome Door

3   Foundation describes additional services and goals, some in conjunction with the Plaintiffs'

4   Wednesday Night Ministry.  Among these are advocacy services (under the classification as

5   alternative sentencing program per the City Attorney's Office), job training, and hygiene services

6   for a so-called "Women Only Program."[4]  San Diego Muncipal Code ("SDMC") §141.0412(a)

7   defines "Homeless Facilities," including "Homeless Day Centers," as follows: "[a]ny facility that

8   provides basic services, including personal hygiene, information and referral, employment, ... to

9   homeless persons."  See **Exhibit A** attached to Defendants' Request for Judicial Notice.  Such

10  facilities are permitted in residential zones pursuant to a conditional use permit.  SDMC

11  §141.0412 [5]

12      Moreover, the Welcome Door Foundation indicates the PBUMC church address as its

13  own business address also has claimed expenses for both the Wednesday Night Meal Program

14  and the Women's Only Program in tax reporting forms that are publicly available.  See,

15  Defendants' Request for Judicial Notice, **Exhibits D** and **E**.  Independent of the Plaintiffs' right

16  to engage in religious activities are those "social services-types" that are provided to the

17

18      [3]   The Welcome Door Foundation is a registered California corporation.  See, Defendants'
Request for Judicial Notice, **Exhibit C**.

19      [4]   Source: http://thewelcomedoor.org/WNPro.htm.  A true and correct copy of the Welcome
Door Foundation website pages is attached as Exhibit D to Defendants' Request for Judicial Notice.

20  Some homeless individuals appear to provide volunteer services for either PBUMC or the Welcome Door
Foundation in exchange for payment of fines by the latter on behalf of the former.

21      [5]   In addition, the following regulations are applicable:

22      (1) [¶]  No more than one homeless day center may be permitted within 1/4 mile of an
emergency shelter, a congregate meal facility, or another homeless day center, * * * .  [¶]

23      (2)  Overnight accommodations and meals for transients are not permitted.  [¶]  (3)  The
center shall provide off-street parking at a rate of at least 1 space per full-time-equivalent

24      employee, calculated at 8 hours of working time per employee per 24-hour period.  [¶]  (4)
Hours of operation shall be limited to 6:00 a.m. to 6:00 p.m.  [¶]  (5)  The center shall

25      provide on-site supervision at all times.  At least one staff member shall be located on the
premises 24 hours per day.  [¶]  (6)  The applicant shall submit the following materials to the

26      decision maker for consideration:  [¶]  (A) A communications plan that describes how the
provider will communicate with local community, neighborhood, and business

27      organizations, and with adjacent neighbors on a regular basis, and how community issues or
concerns will be addressed;  [¶]  (B) A plan to minimize loitering in the vicinity of the

28      facility; and  [¶]  (C) A litter control plan to provide for the removal of litter in the vicinity
of the facility on a regular basis.

9

1  homeless at the same location in connection with the Wednesday Night Ministry by the

2  Welcome Door Foundation, the latter clearly being obligated to obtain a conditional use permit

3  to do so if it were operating independently.

4      Plaintiffs also contend that they are being singled out for enforcement. However, they

5  disclose no facts that suggest that any more than a single investigation has occurred. *Also see*,

6  *infra*, p. 14. Even if an equal protection claim could be asserted, the Ninth Circuit has

7  concluded, in a challenge closely analogous to the instant case, that rational basis is the

8  appropriate standard. *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896

9  F.2d 1221, 1225 (9th Cir. 1990) (*superceded on other grounds by*, 42 U.S.C. § 2000e). The

10  *Christian Gospel Church* court considered a church's equal protection challenge to a city zoning

11  ordinance requiring a conditional use permit for churches in a residential area. The church

12  contended that the zoning provision discriminated against churches in general and plaintiff in

13  particular. The court held that "[s]ince the zoning scheme does not implicate a suspect class or a

14  fundamental right, the appropriate question for this equal protection analysis is whether or not

15  the provision is rationally related to a permissible state objective." *Id*. at 1225.

16      The *Christian Gospel Church* case also held that neighborhood opposition to the granting

17  of a conditional use permit is not unlawful and should be considered by that City's Planning

18  Commission since the views of the residents of the area surrounding the property are important

19  for the Commission to consider in evaluating the impact of a permit on the neighborhood. *Id*.

20  Accordingly, the denial of the conditional use permit in the *Christian Gospel Church* case was

21  held to be rationally related to an important government objective and the appellant's equal

22  protection rights were not violated by the denial of a permit to this particular church. *Id*.

23      Similarly, the fact that Plaintiffs were the subject of an investigation does not implicate

24  any suspect class or fundamental right. Indeed, should NCCD have ignored its obligation to

25  perform an investigation prompted by a complaint, the City would have engaged in unequal

26  treatment as respects all other investigations, which arguably could be interpreted as a reverse

27  discrimination type of enforcement.

28  / / /

10

1    Accordingly, Plaintiffs cannot prevail on the merits in their action on the basis that the

2    City's ordinance, including the investigation of possible violation of the same, as well as possible

3    imposition of a conditional use permit process, infringes upon their exercise of religion in

4    violation of the First Amendment or on equal protection grounds.

5        2.    **The City Defendants Have Not Violated RLUIPA.**

6    RLUIPA, unlike the general constitutional rule discussed above, prohibits the

7    government from imposing "substantial burdens" on "religious exercise" unless there exists a

8    compelling governmental interest and the burden is the least restrictive means of satisfying the

9    governmental interest. See 42 U.S.C. § 2000cc(a)(1)(A)-(B). In connection with the case at bar,

10   RLUIPA prohibits a "land use regulation," or the government's application of a land use

11   regulation, that "substantially burdens a religious adherent's religious exercise in a way not

12   representing the least restrictive means of accomplishing a compelling government interest."

13   *San Jose Christian College v. City of Morgan Hill, supra,* 360 F.3d at 1036.

14   Plaintiffs must prove, however, that the City's zoning ordinances at issue here, even

15   though none have yet been applied to even result in a notice of violation, substantially burden the

16   exercise of religion of the church assembly or its invitees. 42 U.S.C. § 2000cc-2(b).

17   "Substantial burden" exists where the governmental entity "put[s] substantial pressure on an

18   adherent to modify his behavior and to violate his beliefs." *See, e.g., Thomas v. Review Bd. of*

19   *Indiana Employment Sec. Div.,* 450 U.S. 707, 718 (1981). The Ninth Circuit has held that a

20   substantial burden on a person's religious freedom is placed on him or her when the

21   government's actions "prevent him or her from engaging in conduct or having a religious

22   experience which the faith mandates." *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir.1995).

23   In other words, the City here would be prohibited from implementing a land use

24   regulation in a manner that imposes a "significantly great" restriction or onus on "any exercise of

25   religion, whether or not compelled by, or central to, a system of religious belief" of a person,

26   including a religious assembly or institution, unless the government can demonstrate that

27   imposition of the burden on that person, assembly, or institution is: (1) in furtherance of a

28   compelling governmental interest, and (2) the least restrictive means of furthering that

11

1    compelling governmental interest. *San Jose Christian College, supra*, 360 F.3d at 1034-1035

2    (9th Cir. 2004). *Also see, Cutter v. Wilkinson*, 544 U.S. 709, 716-17 (2005); *Warsoldier v.*

3    *Woodford, supra*, 418 F.3d at 994.

4         RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not

5    compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).[6]  Thus,

6    "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be

7    considered to be religious exercise of the person or entity that uses or intends to use the property

8    for that purpose." 42 U.S.C. § 2000cc-5(7)(B).  The issue here is not Plaintiffs' food ministry to

9    the homeless – the City does not dispute that such activities constitute religious exercise.

10        However, the providing of medical, dental, and legal services in connection with this

11   outreach raises questions whether those activities, which incidentally occur with otherwise

12   religious exercise and would not themselves be considered religious exercise independently, are

13   protected by RLUIPA.  Plaintiffs also have cited no authority that has construed the provision

14   medical, dental or legal services, even by a church, to constitute "religious exercise" within the

15   meaning of RLUIPA.  Some states, including the cases cited by Plaintiffs, have concluded,

16   construing local statutory zoning or land use provisions generally, that religious activities are not

17   limited to the more conventional forms of religious worship, structures or facilities.[7]

18   Nonetheless, Plaintiffs' obligation for purposes of their motion for preliminary injunction is to

19   make a sufficient showing that they are likely to prevail on their RLUIPA claim.

20   _____

21        [6]    *See, e.g., Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004),
     *cert. den.*, 543 U.S. 1146 (2005) (determining that "substantial burden" on religious exercise is more than

22   an inconvenience and is "akin to significant pressure which directly coerces the religious adherent to
     conform his or her behavior accordingly," that is, pressure to forgo religious precepts or pressure that

23   mandates religious conduct); *Civil Lib. for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th
     Cir.2003), *cert. den.*, 541 U.S. 1096 (2004) (holding that, in context of RLUIPA's broad definition of

24   religious exercise, a land use regulation that imposes a substantial burden on religious exercise is one that
     renders that exercise "effectively impracticable").

25        [7]    *See, e.g., Matter of Capital City Rescue Mission v. City of Albany Bd. of Zoning Appeals*, 235
     A.D.2d 815, 816, 652 N.Y.S.2d 388 (1997); *Western Presbyterian Church v. Board of Zoning Adjustment*

26   *of District of Columbia*, 862 F.Supp. 538, 544 (D.D.C. 1994) (church's conduct of feeding homeless was
     religious conduct falling within the protections of the First Amendment and the Religious Freedom

27   Restoration Act).  *Cf., Slevin v. Long Island Jewish Med. Ctr.*, 66 Misc.2d 312, 317-318, 319 N.Y.S.2d
     937, 945-946 (1971) (center to address the drug problems of young people, conducted by arrangement

28   with a hospital on the third floor of a church's parish house, held to be a "religious use" within the
     meaning of a town zoning ordinance).

12

1    The scope of RLUIPA has not been clearly established. Even if the Court were to

2    conclude, however, that medical, dental and legal services "could be" construed as religious

3    exercise within the meaning of RLUIPA, the City's application of its generally applicable

4    ordinances do not substantially burden or impose a "significantly great" restriction on Plaintiffs'

5    exercise thereof. Again, the City has merely investigated the possible violation of municipal

6    ordinances that generally apply to regulate the manner in which homeless services can occur

7    within certain zones, and to religious and secular entities or persons. Even if the municipal

8    ordinances were applied to require, for example, Plaintiffs (and/or the Welcome Door

9    Foundation) to obtain a conditional use permit to carry on such activities, this would not impose

10   a significantly great restriction on Plaintiffs' ability to practice their religion. Indeed, no case has

11   remotely suggested that a conditional use requirement otherwise applied equally, without some

12   other form of unconstitutional characteristic, is a RLUIPA violation.

13   Nonetheless, since the City's actions have not moved beyond the mere investigation

14   stage, no activities whatsoever occurring on the church's premises have been restricted. At best,

15   is the possible application of conditional use requirements for Plaintiffs or its partner to continue

16   the more conventional social services. Accordingly, Plaintiffs are not able to demonstrate that

17   they will likely prevail on their RLUIPA claim and a preliminary injunction should not issue.

18   D.   **Plaintiffs Have Not Suffered and Will Not Suffer Irreparable Injury**

19   It is well settled that a party seeking preliminary injunctive relief in a First Amendment

20   context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the

21   existence of a colorable First Amendment claim. *See, e.g., Warsoldier v. Woodford*, supra, 418

22   F.3d at 1001. However, as argued above, Plaintiffs cannot demonstrate the existence of a

23   colorable First Amendment claim on the presenting facts. Plaintiffs instead seek a blanket

24   judicial authorization for conducting activities that would otherwise constitute religious activities

25   only because they, as a church, provide them within their walls. Accepting this assertion to its

26   logical conclusion would permit them to operate a golf course as some means of reaching those

27   persons "religiously" connected to the game of golf. Obviously, Plaintiffs are not operating a

28   golf course.

13

1    However, at the very least, certain activities carried on by the Welcome Door Foundation

2    may be subject to a further conditional use permit requirement. Nonetheless, the City is not

3    disputing Plaintiffs' right to feed the homeless as a genuine form of religious exercise and have

4    not prevented nor have ordered Plaintiffs to discontinue such activities. On the other hand,

5    Plaintiffs are seeking to prevent the City from continuing its ordinary activities to regulate

6    conduct of facilities or entities providing services to the homeless, including those activities

7    carried on by the Welcome Door Foundation. These are activities that a conditional use permit

8    process may facilitate through meaningful community or neighborhood response.

9    When a plaintiff does not show that locating its premises in a particular location is

10   important in some way to its religion and the area from which plaintiff's building is excluded is

11   not large, there is no constitutionally cognizable burden on free exercise.[8] Furthermore, there is

12   no authority that remotely suggests that undergoing the process of a conditional use permit

13   constitutes irreparable injury. However, at the present time, only an investigation is pending and

14   is being reviewed for further action. Jones Declaration, ¶¶ 7, 10.

15   Plaintiffs further suggest that they have been singled out for enforcement per the

16   representations of the NCCD investigator. See, Declaration of April Herron in Support of

17   Plaintiffs' Motion for Preliminary Injunction ("Herron Declaration"), ¶28. The investigator

18   disputes this suggestion. Jones Declaration, ¶6. Plaintiffs also declare that the NCCD

19   investigator stated that the Wednesday Night Ministry activities must cease and further

20   threatened criminal action. Herron Declaration, ¶32. The investigator disputes this

21   interpretation of the responses she provided to requests by Plaintiffs' pastor and others for

22   information regarding the status and possible consequences. Jones Declaration, ¶¶ 7-10.

23   _____

[8] *See, e.g., Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 654 (10th Cir.

24   2006) (inability on the part of a church to open a day care center in a particular district did not constitute "more than an incidental burden on religious conduct"); *Messiah Baptist Church v. County of Jefferson*,

25   859 F.2d 820, 824-25 (10th Cir.1988) (a church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it

26   pleases; it did not matter that the zoning regulations at issue had the incidental effect of making the church's exercise of religion more expensive because it was compelled to build elsewhere in the county);

27   *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*, 699 F.2d 303, 306-07 (6th Cir.1983) (where construction of building for worship had no ritualistic significance, a zoning

28   ordinance prohibiting its erection in a residential district did not impose a substantial burden on the exercise of religion.

14

1  Nonetheless, no such actions have taken place or formally been presented, and there is no

2  evidence to the contrary.

3      Accordingly, Plaintiffs have not yet suffered or are likely to suffer irreparable injury and

4  cannot meet this threshold requirement for a preliminary injunction.

5                                              **IV**

6                                      <u>CONCLUSION</u>

7      For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be denied.

8  Plaintiffs' complaint is not ripe for judicial review, making this motion at least premature.  In

9  addition, Plaintiffs cannot meet the threshold requirements for a preliminary injunction to issue.

10                                  Respectfully submitted,

11  Dated: February 11, 2008         MICHAEL J. AGUIRRE, City Attorney

12
                                     By    /S/
13                                        ROBERT J. WALTERS
                                          Deputy City Attorney
14

15                                   Attorneys for Defendants CITY OF SAN DIEGO,
                                     CITY OF SAN DIEGO NEIGHBORHOOD CODE
16                                   COMPLIANCE DEPARTMENT, JERRY SANDERS,
                                     SCOTT PETERS, KEVIN FAULCONER, TONI
17                                   ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN,
                                     DONNA FRYE, JIM MADAFFER, BEN HUESO,
18                                   MARCIA SAMUELS, PAMELA JONES, and
                                     MICHAEL J. AGUIRRE
19

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS'                    Case No. 07cv2305-LAB-PCL
MOTION FOR PRELIMINARY INJUNCTION