1  MICHAEL J. AGUIRRE, City Attorney
   ROBERT J. WALTERS, Deputy (CSBN 140741)
2      Office of the City Attorney
       1200 Third Avenue, Suite 1100
3      San Diego, California 92101-4100
       Telephone: (619) 533-5800
4      Facsimile: (619) 533-5856
5
   Attorneys for Defendants CITY OF SAN DIEGO,
6  CITY OF SAN DIEGO NEIGHBORHOOD CODE
   COMPLIANCE DEPARTMENT, JERRY SANDERS,
7  SCOTT PETERS, KEVIN FAULCONER, TONI
   ATKINS, TONY YOUNG, BRIAN MAIENSHCEIN,
8  DONNA FRYE, JIM MADAFFER, BEN HUESO,
9  MARCIA SAMUELS, PAMELA JONES, and
   MICHAEL J. AGUIRRE
10
11                 UNITED STATES DISTRICT COURT
12                SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 13 PACIFIC BEACH UNIFIED METHODIST ) | Case No. 07cv2305-LAB-PCL | |
| CHURCH, a California Religious Corporation; ) | | |
| 14 and its Pastor APRIL HERRON, ) | DECLARATION OF PAMELA D. | |
| ) | JONES IN SUPPORT OF | |
| 15     Plaintiffs, ) | DEFENDANTS' JOINT OPPOSITION | |
| ) | TO PLAINTIFFS' MOTION FOR | |
| 16     v. ) | PRELIMINARY INJUNCTION | |
| ) | | |
| 17 THE CITY OF SAN DIEGO; CITY OF SAN ) | [FRCP Rule 56] | |
| 18 DIEGO NEIGHBORHOOD CODE ) | | |
| COMPLIANCE DEPARTMENT, Mayor ) | **Judge:** | Hon. Larry Alan Burns |
| 19 JERRY SANDERS, City Council Members ) | **Date:** | February 25, 2008 |
| SCOTT PETERS, KEVIN FAULCONER, ) | **Time:** | 10:30 a.m. |
| 20 TONI ATKINS, TONY YOUNG, BRIAN ) | **Dept.:** | Courtroom 9, 2nd Floor |
| 21 MAIENSHCEIN, DONNA FRYE, JIM ) | | |
| MADAFFER, BEN HUESO, NCC Director ) | | |
| 22 MARCIA SAMUELS, NCC Land Development ) | | |
| Investigator PAMELA JONES, and City ) | | |
| 23 Attorney MICHAEL J. AGUIRRE, in their ) | Complaint filed: | December 7, 2007 |
| office capacities; and DOES 1 to 25, inclusive, ) | | |
| 24 ) | | |
| 25     Defendants. ) | | |
| ) | | |

26
27 ///
28

1

DECLARATION OF PAMELA JONES IN SUPPORT OF DEFENDANTS' JOINT          Case No. 07cv2305-LAB-PCL
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Pamela D. Jones, hereby declare as follows:

1. I am employed by the City of San Diego as a Land Development Investigator II for the Neighborhood Code Compliance Department ("NCCD"). I have personal knowledge of the matters stated herein, except for those matters stated on information and belief, which I believe to be true. I could and would competently testify to the matters stated herein if called as a witness to do so.

2. On November 7, 2007, at approximately 12:55 p.m., I arrived at the Pacific Beach United Methodist Church ("PBUMC") located at 1561 Thomas Street in the City of San Diego, to investigate a complaint made to the NCCD regarding the church activities conducted on Wednesday night regarding the homeless at this location.

3. I spoke with Pastor April Herron who stated PBUMC feeds approximately 200 people, and provide medical and dental services provided through the UCSD Medical School, acupuncture services provided through the Pacific College of Oriental Medicine, and legal services from volunteers to the persons who attend its Wednesday Night Ministry, including to homeless persons. The people start arriving around 4:00 p.m. in the court yard and they are served around 5:30 p.m. Meals end at 7:00 p.m. then the other services are provided until 10:00 p.m. in the evening. She stated the medical and dental services are provided by students of UCSD Medical School and the acupuncture services are by provided by the Pacific College of Oriental Medicine. Ms. Herron also showed me the rooms used to perform the services and we also toured the kitchen area.

4. After the initial investigative visit to PBUMC, I continued to analyze the information and compare the same to other investigations by the NCCD. At any given time, on the average, I am investigating approximately 100 cases. My case load in 2007 was a total of approximately 300 investigations. Because I did not find a precise comparable situation, I made inquiries with my supervisor, Ida Ford, Senior Land Development Investigator, as well as Melody Negrete, Code Enforcement Coordinator. and reviewed the Land Development Code (San Diego Municipal Code). We also reviewed previous letters from the City Attorney's Office providing guidance regarding land use requirements when homeless facilities or services were

2

DECLARATION OF PAMELA JONES IN SUPPORT OF DEFENDANTS' JOINT    Case No. 07cv2305-LAB-PCL
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

provided in a residential zone. A true and correct copy of such letters of advice from the City Attorney's Office is attached hereto as **Exhibit A**. However, this did not resolve the issue. As a consequence, the issue was presented to the City Attorney's Office for more specific guidance. Contrary to Pastor Herron's sworn declaration, I did not state to her that I was given orders to find something on the church, nor did I receive such direction from any other person, including City staff, my supervisors, or from Mayor Sanders' office or that of any City Council member, including his or her staff.

5. When I met with Pastor Herron, or in subsequent telephone conversations, I do not recall specifically stating to Ms. Herron that specific law enforcement action or criminal action could result as a consequence of non-compliance with any notice of violation that may be issued. I do recall that she, over the course of the investigation, requested information or asked questions regarding the investigation and possible outcomes. Since there had no notice of violation issued, although it appeared that the issuance of a notice of violation was possible, to the best of my recollection, I advised that one possible result was referral to the City Attorney's office for civil or criminal enforcement. Since criminal enforcement would be for a misdemeanor, it was and is my understanding that fines were possible. However, I did not state that imprisonment was possible. It is my understanding that imprisonment is not an enforcement of a misdemeanor.

6. I also do not recall stating to Pastor Herron that I had not previously investigated or cited any other church. I have conducted inspections of churches in connection with investigations I have done, although different alleged code violations were presented. This was the first complaint I was ever responsible for investigating in which the presenting issue was the providing of services to homeless persons by a church permitted within a residential zone.

7. I recall having conversations with Pastor Herron on November 13, 2007, who was requesting to be informed of the current status of my investigation, at which time I informed that I continued to be reviewing their case with my supervisor.

8. I also recall a further telephone call at my initiation because Pastor Herron asked to be kept informed of my progress on November 26, 2007. I explained that one possible issue

3

with respect to the providing of meals to the homeless was that it may be limited to 28 days a year. I also stated the other services, such as the medical, dental, and legal services, did not appear to be permitted in the absence of obtaining a conditional use permit. I explained a Notice of Violation may be issued as to these items. I do not recall advising Pastor Herron that she should obtain an attorney. It is my recollection that she stated that it was her intention to contact the City Council members and an attorney. I do not recall the pastor requesting information for specific zoning code provisions upon which the possible Notice of Violation would be based. I also do not recall stating "no just you" to Pastor Herron regarding the enforcement action taken by NCCD with respect to churches, although to my knowledge at the time, I was unaware that a similar complaint had been made about homeless services provided by a church.

9. On November 29, 2007, I returned a call from Mary Herron, whom I understand to be Pastor Herron's mother, and left a voicemail message at her request identifying the sections that may be referenced in the Notice of Violation. I indicated the following San Diego Municipal Code provisions: Section 131.0406, Section 131.0420, Section 131.0422, and 141.0412(a)(3).

10. I again spoke with Pastor Herron in a telephone conference on December 5, 2007, and explained no Notice of Violation had yet been issued because NCCD staff was still reviewing the case. I did state we were researching whether a Conditional Use Permit was required as an accessory to the church. I did not, however, threaten daily fines or a referral to the City Attorney for legal or court action. To the best of my recollection, Pastor Herron stated on this occasion that any Notice of Violation will be violating their First Amendment rights saying they cannot exercise their religion by feeding the homeless and providing the other services. No further action has been taken pending further direction by the City Attorney's Office.

I declare under penalty of perjury of the laws of California that the foregoing is true and correct and that this declaration was executed on February 11th, 2008, at San Diego, California.

PAMELA D. JONES

4

DECLARATION OF PAMELA JONES IN SUPPORT OF DEFENDANTS' JOINT   Case No. 07cv2305-LAB-PCL
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**EXHIBIT A**

Office of
The City Attorney
City of San Diego

MEMORANDUM

236-6220

Zoning Administration

OCT 0 9 1987

RECEIVED

DATE: October 6, 1987

TO: Burch Ertle, Assistant to the Zoning Administrator

FROM: City Attorney

SUBJECT: Housing for the Homeless in Church Facilities

---

Your memo of September 25, 1987, asked whether housing the homeless in churches in the single-family zones would be a permitted use.

It does not appear that the housing of homeless people in churches would be permitted in single-family zones unless an amendment to a Conditional Use Permit (CUP) was obtained. Within multi-family zones, churches are a permitted use as well as multi-family residential structures. In these zones, housing homeless people in a church would appear to be a residential use of the property. However, Municipal Code Section 101.0410.B.3. provides that temporary housing of persons for less than one week is prohibited.

If a church, located in a single-family zone, does not have a CUP because the church predates the CUP requirement, a CUP would be needed to cover the church and the housing of the homeless.

The decision in the Sunrise Christian Fellowship case is not applicable to the homeless housing issue. Sunrise involved a particular religious group whose teachings included feeding the masses. The homeless housing program does not have this foundation.

JOHN W. WITT, City Attorney

By Frederick C. Conrad
   Frederick C. Conrad
   Chief Deputy City Attorney

FCC:cc:600



THE CITY OF
# SAN DIEGO

CITY OPERATIONS BUILDING • 1222 FIRST AVENUE • SAN DIEGO, CALIFORNIA 92101

**REGULATORY PLANNING
DIVISION**
Planning
Department
236-6485

October 7, 1987

Blair Burns
Interfaith Shelter Network Coordinator
Regional Task Force on the Homeless
655 4th Avenue, Suite #36
San Diego, CA  92101

RE: Your Letter of September 17, 1987

Dear Mr. Burns:

Attached is a list of churches located within multiple family and commercial zones that may participate in the shelter program without further approval from the Planning Department. The underlying R-3000 and C zones permit churches as well as apartments and boarding houses. The sheltering of up to 12 persons on a temporary basis as proposed would be considered a permitted use in these zones. The approved sites are as follows:

1. Ocean Beach Baptist - 4790 Santa Monica (R-3000)

2. Assembly of God - 2069 Ebers (R-3000)

3. Holy Trinity - 2083 Sunset Cliffs (R-3000)

4. Bethany Lutheran - 2051 Sunset Cliffs (R-3000)

5. Pacific Beach Presbyterian - 1675 Garnet (C)

6. La Jolla Lutheran - 7111 La Jolla Boulevard (R-3000)

The remaining nine sites identified in your letter of September 17th, are within single-family residential zones which do not permit group or multiple family housing. The use, in these cases, would require an amendment to the approved Conditional Use Permit for the church facility. Such an amendment, if approved, would probably be conditioned, or limited to temporary shelter for a limited number of persons for a limited period of time on an annual basis.

10-7-87

Church use is permitted within single-family zones through a Conditional Use Permit approved by the Zoning Administrator. The CUP process provides the opportunity to place religious facilities within neighborhood areas for the convenience of local residence. The housing of a transient population is not an activity that was anticipated or considered to be a normal function of a church, especially in single-family neighborhoods. The amendment procedure described above provides appropriate notice to the surrounding community and fulfills the requirement for due process.

If you have any question relating to this matter, please call me at 236-6485.

Sincerely,

City Planning Department

Burch Ertle
Assistant to the Zoning Administrator

SLC:BE:pcv

cc: Mayor's Office
    City Attorney's Office



# THE CITY OF SAN DIEGO

CITY OPERATIONS BUILDING • 1222 FIRST AVENUE • SAN DIEGO, CALIFORNIA 92101

**REGULATORY PLANNING DIVISION**
Planning Department
236-6485

November 12, 1987

Mr. Frank Landerville
Project Director
Regional Task Force on the Homeless
655 4th Avenue, Suite #36
San Diego, CA 92101

RE: Conditional Use Permit Amendments for Churches in Single-family Zones

Dear Mr. Landerville:

The purpose of this letter is to update you on our hearing process and thank you for your efforts in getting us the necessary information for noticing the hearings on the church sites scheduled for consideration by the Zoning Administrator on December 4, 1987. We are in the process of preparing and printing the notices which must be mailed at least 10 days prior to the hearing date. In addition, the Environmental Quality Division has indicated to us that the Negative Declaration for this project will be issued during the week of November 23, 1987.

I have informed Blair Barnes of your staff that the two church sites on Thomas Avenue (1050 and 1561) are being removed from the hearing agenda because they are in a multi-family zone (R-1500) and are not subject to the Conditional Use Permit process. This reduces the agenda to three facilities which include St. Dunstans, Ascension Lutheran and La Jolla United Methodist Church.

I also want to thank you for your patience with our bureaucratic system and hope that you recognize that we have done our best to consider the project at the earliest possible time. We anticipate that additional churches will wish to participate in the housing program and may require the amendment process. In this regard, we would appreciate as early a submittal as possible. The information submitted for the upcoming hearings would be adequate for any future application.



11-12-87

Though our system may seem somewhat cumbersome at times, once the hearing process has occurred, and the amendment approved, any future hearings for this activity would not be necessary. If approved, the condition we are anticipating placing on the projects would allow the on going utilization of the church site for housing a specified number of people over a limited period of time annually or semiannually. It would be appropriate for any church anticipating future involvement in this type of activity to request an amendment to their Conditional Use Permit. Four our part, we will suggest to future applicants for new church sites include this type of condition in the original permit request.

Again, thank you for your patience. If you have any questions please feel free to call me at 236-6485.

Sincerely,

City Planning Department

Burch Ertle
Assistant to the Zoning Administration

BE:pcv

cc: Mayor's Office
    City Planning Director
    Building Inspection Department Director

CITY of SAN DIEGO
MEMORANDUM

E:

E:         December 8, 1987

           Joe Schilling, Deputy City Attorney

M:         Sharren L. Carr, Zoning Administrator

JECT:      Housing for the Homeless in Church Facilities

---

This memo is to clarify Zoning Administration's procedures and activities in the area of housing on temporary basis for the homeless in various church facilities throughout the City. Zoning Administration was first contacted by the Regional Task Force on the Homeless in September of 1987 with a list of churches that had volunteered to participate in the Interfaith Church Shelter Program for 1987. The program as proposed by the Regional Task Force would include limited shelter for a short term period on an annual basis for each church site. The request by the Interfaith Regional Task Force is to provide housing for two periods, of up to 14 days for a maximum of 12 people. This means that a given church site would be allowed to provide housing for the homeless for a total of 28 days annually. During any 14-day period, a maximum of 12 individuals would be allowed to live on the premises. The City of San Diego was concerned that churches participating in this program were not equipped to provide meals, restrooms, showers and sleeping accommodations.

The manager's report on homeless policy issues, dated September 11, 1987, addresses the need for emergency shelter resources. In that report, it was recommended that the City provide limited funding for the coordination of a church shelter program. That recommendation was adopted by the Public Services and Safety Committee as part of the 1988 social service funding.

In September of 1987, the Task Force for the homeless submitted a a list of 15 church sites that were participating in the shelter program. Through conversations with the program coordinator that list was reduced to 12 sites. Zoning Administration researched the sites to determine zoning and permit history on each facility. It was determined that not all sites would be required to amend, or apply for, a Conditional Use Permit for such housing. The determination was based upon the zone designation and the minimal nature of the program (maximum 14 days annually for a maximum of 12 individuals).

MEMO -

12-8-87

Because of the limited nature of the activity and the fact that many commercial and residential zones allow for more intense uses such as apartment, it was determined that those churches located within commercial or multiple family residential zones would not need any additional authority from the Zoning Administration to participate in the program. There still was concern, however, that the facilities participating in the program contain adequate facilities to accommodate the proposed temporary use. On the other hand, even though the activity is limited, there is nothing in the single family residential zones that permits this activity.

As a result, the Zoning Administrator, after meeting with the City Attorney, determined that churches within the R-1 zones where churches already require a Conditional Use Permit would be required to amend their existing Conditional Use Permits to provide for this additional activity on the premises.

The housing program proposed by the Regional Task Force is limited in nature and is not an operation that is conducted on a 365 day a year basis. The program provides emergency shelter limited to those months in a year when inclimate weather is a factor.

In summary, the housing for the homeless program administered by the Regional Task Force for the Homeless is an emergency shelter program to provide shelter during (periods of inclimate weather). The activity is limited to church facilities. Those churches which require a Conditional Use Permit to operate require an amendment to that permit to provide for this additional activity. Churches located within multi-family and commercial zones, where churches are permitted by right, would not be required to make application for a Conditional Use Permit based upon the limited nature of the activity. Any expansion of that activity would be subject to review by the Zoning Administrator and the possible requirement for a Conditional Use Permit for the housing of dependent persons as required by zoning regulations. Attached is a copy of the guideline for Building Inspection and Fire Department for churches participating in this program.

BE:pcv

Attachment