**DREHER LAW FIRM**
Robert Scott Dreher (CSB No. 120527)
Robert Scott Norman (CSB No. 253185)
Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 202
San Diego, CA 92101
619-230-8828 / fax 619-687-0136

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

PACIFIC BEACH UNITED METHODIST CHURCH, a California Religious Corporation; and its Pastor APRIL HERRON;

Plaintiffs,

vs.

The CITY OF SAN DIEGO; CITY OF SAN DIEGO NEIGHBORHOOD CODE COMPLIANCE DEPARTMENT; Mayor JERRY SANDERS, City Council Members SCOTT PETERS, KEVIN FAULCONER, TONI ATKINS, TONY YOUNG, BRIAN MAIENSCHEIN, DONNA FRYE, JIM MADAFFER, BEN HUESO, NCC Director MARCIA SAMUELS, NCC Land Development Investigator PAMELA JONES, and City Attorney MICHAEL J. AGUIRRE, in their official capacities; and DOES 1-25;

Defendants.

Civil Case No.: 07 CV 2305LAB PCL

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS.**

Judge: Hon. Larry A. Burns
Date: February 25, 2008
Time: 10:30 a.m.
Ctrm: Courtroom 9, Second Floor

# TABLE OF CONTENTS

INTRODUCTION.......... 1

SUMMARY OF ARGUMENT.......... 2

I. PLAINTIFFS HAVE STATED VALID CLAIMS FOR VIOLATIONS OF THE FIRST AMENDMENT AND RLUIPA.......... 3

A. *Plaintiffs' Claims Are Ripe for Judicial Review Because There Is a "Credible Threat" of Imminent Punishment and Prosecution*.......... 4

B. *Plaintiffs Will Suffer Considerable Hardship If The Court Allows The City To Behave in This Fashion.* .......... 6

II. THE MUNICIPAL ORDINANCES DEFENDANTS SEEK TO ENFORCE ARE INAPPLICABLE TO PLAINTIFFS AND THEIR ACTIVITIES.......... 9

III. THIS COURT CAN COMPEL THE CITY AND ITS OFFICIALS TO OBEY THE LAW.......... 10

CONCLUSION .......... 11

//

//

# TABLE OF AUTHORITIES

## Federal Cases:

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .................................... 3

*Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation*, 792 F.2d 782 (9th Cir. 1986). ........................................................................................ 3

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)........................... 5

*Bd. of County Comm'r of Bryan County v. Brown*, 520 U.S. 397 (1997)..................... 10

*Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102 (1974)............................. 4

*Carpinteria Valley Farms v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003) .... 5

*Chavez v. Director, OWCP*, 961 F.2d 1409 (9th Cir. 1992). ................................... 3

*Conley v. Gibson*, 355 U.S. 41 (1957) ........................................................... 2

*Doe v. Bolton*, 410 U.S. 179 (1973)................................................................ 4

*Doucette v. City of Santa Monica*, 955 F. Supp. 1192 (C.D. Cal. 1997) .................. 4

*Guru Nanak Sikh Society of v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006)........... 6

*Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246 (9th Cir. 1997) ................................ 2

*Hernandez v. Commissioner*, 490 U.S. 680 (1989) ............................................ 9

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996).................................................... 8

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) ................................ 4

*Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998) ................................ 6

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) ...................... 8

*Milliken v. Bradley*, 433 U.S. 267 (1978)........................................................ 10

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). ....................................... 10

*New York v. Cathedral Academy*, 434 U.S. 125 (1977)........................................ 8

*Pareto v. FDIC*, 139 F. 3d 696 (9th Cir. 1998) .................................................. 2

*R.S.S.W., Inc. v. City of Keego Harbor*, 18 F. Supp. 2d 738 (E.D. Mich. 1995)........... 5

*San Diego County Gun Rights Committee v. Janet Reno*, 98 F.3d 1121 (9th Cir. 1996)........................................................................................... 5

*Sherbert v. Verner*, 374 U.S. 398 (1963) .................................................. 9

*Steffel v. Thompson*, 415 U.S. 452 (1974)................................................... 4

*Stuart Circle Parish v. Board of Zoning Appeals*, 946 F. Supp. 1225 (E.D. Va. 1996)... 5

*Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134 (9th Cir. 2000) ............... 5

*Thomas v. Review Bd.*, 450 U.S. 707 (1981)................................................... 8

*Washington Mercantile Ass'n v. Williams*, 733 F.2d 687 (9th Cir. 1984) .................. 5

*Western Presbyterian Church v. Board of Zoning*, 862 F. Supp. 538 (D.D.C. 1994)..... 6

*Williamson County v. Hamilton Bank*, 473 U.S. 172, (1985)..................................... 5

**Statutes**:

U.S. Const. amend. 1.... ........................................................................... 3

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et. seq. ...... 3

42 U.S.C. § 2000cc(a)(1) (2000) ........................................................................ 7

42 U.S.C. § 2000cc-5(7) (2000)......................................................................... 8

S.D. Mun. Code §131.0420 (2000) ...................................................................... 9

S.D. Mun. Code §141.0422 (2000) ...................................................................... 9

S.D. Mun. Code §141.0412(a)(3) (2000) ............................................................... 9

S.D. Mun. Code §113.0103 (2007) ....................................................................... 9

## INTRODUCTION

Pastor April Herron was in her office at 3:00 p.m. last Halloween when Pamela Jones, an officer with the San Diego Code Compliance Department, showed up at the Church. "*We've got a report that you're violating the law,*" Jones announced. "*Feeding people at your Wednesday night ministry is illegal.*"

Pastor Herron was stunned. "*This ministry has been going on for at least 14 years, and it's hardly any different from our Sunday services,*" she said. "*Pacific Beach United Methodist Church has owned this property since the 1950's and never had any complaints. How can it be illegal to do what the Bible and our Religion command?*" said Herron.

Without answering and without a warrant, Jones proceeded to tour the Church property in an "investigatory" show of authority that was unmistakably designed to chill the Church's activities and send a message of intimidation. Herron, for her part, was certain that once Jones observed that evening's services, she would realize that the Church was doing nothing wrong.

But instead of staying to witness the Church's Wednesday evening ministry, Jones left after half an hour. Clearly she had made up her mind before she arrived and the "investigation" was a sham. As she left, and several times after, she said "*You're in violation of the Municipal Codes. You must cease and desist the Wednesday night services.*"

"*What codes?*" asked Herron repeatedly, now becoming very worried. "*What kind of punishments are we facing?*"

"*We don't know the specifics yet, but we will find some,*" said the City. "*And then we will ticket and fine you. You will receive a citation in the mail and there's no appeal. You could be arrested or jailed. You'd better get a lawyer.*"

Over the next few days, Pastor Herron frantically tried to find out more details. She called her Councilman's offices. "*There've been complaints, you're in trouble*" was all they'd say. She telephoned Jones and Jones' boss at NCC. "*The citation is almost ready, you'll receive it in the mail in a week or two*," they said. "*You will be ordered to cease and desist*."

Herron knew the Church didn't have a lot of money, a fine could be ruinous. Would she arrive at the Church tomorrow to find it sealed-off with yellow police tape? Would the police arrive and take her to the station? Would expensive court proceedings be filed? Pastor Herron began to worry about whose law to follow: God's and Jesus' law as taught in the Bible, or the City's law which threatened the Church's activities? Herron also considered the consequences of abandoning her religious responsibilities and complying with the City's orders. Then, heeding part of Jones' advice, the Church hired a lawyer and filed this action.

And that's the point. In <u>this</u> country, under our Constitution, the government must <u>never</u> put a church in such a position. When a Church is put in such a predicament, it is entitled to seek an injunction barring the City from continuing the conduct which causes a church to consider ceasing to practice its religion. This City is <u>already</u> subject to such an injunction, issued in an identical situation 20 years ago. Will this Court not enforce it?

## SUMMARY OF ARGUMENT

Pacific Beach Unified Methodist Church has pled (and that "pleading" is assumed to be true[1]) that the City has threatened to cite, fine and jail the Church and its congregation for

---

[1] When considering a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as all <u>reasonable inferences</u> to be drawn from them (Rule 12(b)(6); *Pareto v. FDIC*, 139 F. 3d 696, 699 (9th Cir. 1998); *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997): Rule 8 contains a "presumption against rejecting pleadings for failure to state a claim"). A suit should not be dismissed if the facts alleged would entitle Plaintiffs to some form of legal remedy (*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); or if it is possible to hypothesize facts, consistent with the complaint, that would state a claim (*Hearn v. RJ Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1101 (D. Ariz. 2003).

activities which amount to nothing more than the regular practice of Plaintiffs' religion on their own property. A church faced with such a threat, repeated several times by an Officer of the City, can only assume it is a "credible threat." Plaintiffs need not "wait and see" whether the City follows through on that threat before seeking the Court's help.

The City told Plaintiffs clearly and unambiguously that they are in violation of City ordinances, that they would receive a notice of violation in a matter of weeks, that they would be required to cease their religious activities, that the action was unappealable and they should get a lawyer. The City's actions violate the First Amendment to the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at §§ 2000cc et seq.

Only after the filing of this lawsuit did the City balk. Does the City get to "have it both ways?" Is the City entitled to threaten and intimidate a Church (or any other citizen for that matter) without recourse, only to say "we didn't really mean it" when called into Court?

## I.
## PLAINTIFFS HAVE STATED VALID CLAIMS FOR VIOLATIONS OF THE FIRST AMENDMENT AND RLUIPA

The Supreme Court has indicated that ripeness is to be determined by the application of a two-prong test. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967), *abrogated on other grounds*. "We must evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (emphasis added); *see also Assiniboine & Sioux Tribes v. Board of Oil & Gas Conservation,* 792 F.2d 782, 788 (9th Cir. 1986). Ripeness will prevent review only if the systemic interest in postponing adjudication due to lack of fitness outweighs the hardship on the parties created by postponement. *Chavez v. Director OWCP,* 961 F.2d 1409, 1414 (9th Cir. 1992).

### A. *Plaintiffs' Claims Are Ripe for Judicial Review Because There Is a "Credible Threat" of Imminent Punishment and Prosecution.*

Where a plaintiff has been "credibly threatened" with punishment or arrest by a City official for engaging in activities which are protected by the Constitution, its constitutional claim is sufficiently "ripe" for purposes of Court review. *Doucette v. City of Santa Monica*, 955 F. Supp. 1192, 1199 (C.D. Cal. 1997); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "In these circumstances, it is not necessary that petitioners first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they] claim deters the exercise of constitutional rights." *Id.*; *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

Moreover, the Supreme Court requires that this Court put substance over form: when enforcement of a statute or regulation is inevitable and the sole impediment to "ripeness" is simply a delay before the proceedings commence, the controversy is "ripe" for judicial review. *Kardules v. City of Columbus*, 95 F.3d 1335, 1344 (6th Cir. 1996), citing *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 139-45 (1974). A promise that "the citation is in the mail" and "you'd better get a lawyer" sounds like "inevitable."

There is no requirement that there must be a "final" agency or state action before a plaintiff seeking declaratory and injunctive relief can challenge a practice which causes actual or threatened injury.[2] In *Doucette v. City of Santa Monica*, the Court considered whether homeless people could preemptively challenge an ordinance regulating solicitation.

---

[2] *Williamson County v. Hamilton Bank*, 473 U.S. 172, 191 (1985), cited by Defendants, was a 5th Amendment "Takings" case, and hence is inapplicable here. *Carpinteria Valley Farms v. County of Santa Barbara*, 344 F.3d 822, 829-30 (9th Cir. 2003) (commenting that *Williamson* does not apply when plaintiffs allege "separate claims supported by allegations of discrete constitutional violations"); *Stuart Circle Parish v. Board of Zoning Appeals of the City of Richmond, Virginia*, 946 F. Supp. 1225, 1234 (E.D. Va. 1996) (holding that plaintiffs were not required to apply for a conditional use permit in order for an action filed under the First Amendment and Religious Freedom and Restoration Act (the predecessor to RLUIPA) to be ripe).

*Doucette*, 955 F. Supp. at 1192. The Court noted that the inquiry is "whether any named plaintiff has demonstrated that he has sustained or is imminently in danger of sustaining a direct injury as a result of the challenged conduct." *Id.* at 1198.[3] *See also Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000), quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (To determine whether a claim is ripe for adjudication, the Court "must consider whether plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement'").

Although in *Doucette* the central issue was the Plaintiffs' "standing" to bring a lawsuit, the inquiry and applicable legal principals are the same as those here. Indeed, the Ninth Circuit has recognized and adopted the principle that credible or specific threats of punishment or prosecution are ripe for judicial review. *See, e.g., San Diego County Gun Rights Committee v. Janet Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("plaintiffs must show a '*genuine* threat of *imminent* prosecution") (citing *Washington Mercantile Ass'n v. Williams*, 733 F.2d 687, 688 (9th Cir. 1984); *Thomas*, 220 F.3d at 1140 (holding that plaintiffs claims were not ripe because plaintiffs failed to allege a specific threat of future enforcement).

The City made a "credible threat" of state action intended to limit Plaintiffs' religious activities. (Compl., ¶38, ll. 5-8; ¶42, ll. 6-7; ¶44, ll. 4-9). Plaintiffs need not wait to be arrested or cited. *See Babbitt*, 442 U.S. at 298-99 (Court does not require plaintiffs to await arrest or prosecution before entertaining a challenge to the constitutionality of a statute.); *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F. Supp. 2d 738, 748 (E.D. Mich. 1995).

---

[3] Interestingly, in *Doucette* the Court was presented with evidence that the Defendant was no longer enforcing the subject ordinance against the Plaintiffs. But here, despite ample opportunities (via a letter to counsel or in its Moving Papers) to present the Court with such evidence, the City has NOT done so. This gives the lie to Defendants' arguments.

Plaintiffs are in imminent danger of receiving a citation, fine, punishment, and an order to cease practicing fundamental tenets of their religion. (Compl., ¶38, ll. 5-8; ¶42, ll. 6-7; ¶44, ll. 4-9). Plaintiffs are, because of the City's actions, now faced with choosing between complying with the City's "ordinance" or following the mandates of their Faith. (Compl., ¶41, ll. 23-28; ¶44, ll. 11-23). These are "credible" and "specific threats" sufficient to establish ripeness. *See Doucette*, 955 F. Supp. at 1198; *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1216-17 (8th Cir. 1998) (plaintiffs in a declaratory judgment action have standing even though none of the plaintiffs ever received a ticket or were prosecuted).

The real question here is: does the City get a "free shot" at trying to restrain Plaintiffs' exercise of their religion, hoping to intimidate a church into "compliance," but disavow those restraints when called before the Court?

### B. *Plaintiffs Will Suffer Considerable Hardship If The Court Allows The City To Behave in This Fashion.*

> "Once the zoning authorities of a city permit the construction of a church in a particular locality, the city must refrain, absent extraordinary circumstances, from in any way regulating what religious functions the church may conduct. Zoning boards have no role to play in telling a religious organization how it may practice its religion. A city cannot use its zoning laws to regulate the way a particular religion offers its prayers or the way it celebrates its holidays."

*Western Presbyterian Church v. Board of Zoning Adjustment of the District of Columbia*, 862 F. Supp. 538, 546 (D.C. Dist. 1994); *see also*, *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 987 (9th Cir. 2006) (city cannot use facially-neutral zoning code to deny a certain religious use of a particular parcel of land)).

The First Amendment and RLUIPA forbid the government from imposing a "substantial burden" on religious uses of land unless those restrictions are necessary to further a compelling government interest. 42 U.S.C. § 2000cc(a)(1) (2000). The religious

use of land is the core concept protected by that statute. 42 U.S.C. § 2000cc(a)(1) ("No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution…"). Plaintiffs fall squarely into this category because the City is imposing a land use regulation in a manner that limits or restricts the religious use of Plaintiffs' land.

The use of the land does not have to be a "core religious practice." Rather, "the term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The statute states explicitly that "the use of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B). Plaintiffs' actions are per se religious and legal.

The City's contention that Plaintiffs' Wednesday night ministry is not a religious exercise is particularly ill-considered, considering that the City is currently subject to an injunction, issued 21 years ago by Judge Schwartz, preventing it from interfering with a Church's mission of holding a common meal for all people in need (*Sonrise Christian Fellowship v. City of San Diego*, No. 86-1429 S (S.D. Cal. June 23, 1986) (stipulation and order granting injunction); (*See* Plaintiffs' Request for Judicial Notice ("RFJN") ¶ 1-2; Exh. 1-2). In his order granting a preliminary injunction, Judge Schwartz said, "The common meal is a religious practice entitled to the protection of the First Amendment of the United States Constitution." (*See* Exh. 1, p. 2, ll. 14-16; RFJN ¶ 1).

And this is not a debate about the practice itself. Neither Defendants nor the Court can litigate or decide the degree to which the Church's use of its own property has religious, symbolic, or sacramental importance. "The prospect of church and state litigating about

what does or does not have religious meaning touches the very core of the constitutional guarantee against religious establishment," and cannot occur. *New York v. Cathedral Academy*, 434 U.S. 125, 133 (1977). The Court's scrutiny "extends only to whether a claimant sincerely holds a particular belief and whether the belief is religious in nature." *See Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

It is something of an understatement to say that Plaintiffs' Wednesday Night Ministry is a religious exercise that will be substantially burdened if it is cancelled. The test for what is a "substantial burden" is extremely broad. Congress requires that the substantial burden clause be construed broadly in favor of protecting religious exercise "to the maximum extent permitted by the terms of this [Act] and the Constitution." 42 U.S.C. §2000cc-3(g) (2000).

The question of whether state action imposes a substantial burden on religious exercise depends on whether the conduct curtailed by the state would cause "an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988) (explaining that to trigger strict scrutiny under the First Amendment a government burden must have a "tendency to coerce individuals into acting contrary to their religious beliefs") (emphasis added). In other words, a substantial burden on religious exercise exists when compliance with governmentally dictated or proscribed behavior would cause a religious adherent to trespass on a "religious belief or practice." *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *see also Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (A substantial burden is found when a person is required to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning the precepts of her religion . . . on the other").

The City has forced Plaintiffs to choose between practicing their religion or complying with an ordinance which, on its face, does not apply. (Compl. ¶ 41, ll. 23-28; ¶¶ 42-43, ll. 1-28; ¶¶ 44-45, ll. 1-23). It is beyond question that such a choice substantially burdens Plaintiffs' religious exercise.[4]

## II.
## THE MUNICIPAL ORDINANCES DEFENDANTS SEEK TO ENFORCE ARE <u>INAPPLICABLE TO PLAINTIFFS AND THEIR ACTIVITIES</u>

For the past 60 years Plaintiffs have operated on their property as a "church," defined under Municipal Code §113.0103 as "*an institution that people regularly attend to participate in or hold <u>religious services</u>, <u>meetings</u>, <u>or</u> <u>other activities</u>.*" Churches or other places of worship are "Permitted" in Residential Zones, per Municipal Code §§131.0420 and 131.0422. Plaintiffs' participation in the Wednesday Night Ministry is within the usual reach of the terms "church" and "places of worship," and thus constitutes a permissible principal use in the RM zones in which the Church is located. (Compl. ¶ 43, ll. 9-28).

Defendants seem to believe that Plaintiffs are operating a "Homeless Day Center." Municipal Code §131.0422 states that "Homeless Day Centers" are not permitted in Residential Zones. But Pacific Beach United Methodist Church is not, and does not operate, a "homeless day center" -- Plaintiffs do not provide "basic services," "personal hygiene," "information and referral," "employment," "mail," or "telephone services" during daylight hours. *Id.* §§141.0412(a)(3)(2000). (Compl. ¶ 50, ll. 20-27; ¶ 50, ll. 1-5).

---

[4] Defendants contend that RLUIPA doesn't apply because the municipal ordinance is neutral and of general applicability. Plaintiffs aren't challenging the facial validity of the ordinance, but rather Defendants' threatened <u>application</u> of it to Plaintiffs. The subjective assessments made by Defendants that Plaintiffs' activities were inconsistent with those normally associated with a church, together with the <u>fact</u> that Defendants singled-out Plaintiffs' Church, proves that this argument is without merit. Under the plain meaning of § 2000cc(a)(2)(C), quoted above, RLUIPA applies whenever a government takes into account particular details of a church's use of land when deciding to permit that use. *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006).

## III.
## THIS COURT CAN COMPEL THE CITY AND ITS OFFICIALS TO OBEY THE LAW

Plaintiffs are entitled to seek declaratory and injunctive relief to compel government officials to do an act they are legally required to do, or to enjoin them from acting in a way that is illegal. *See, e.g., Milliken v. Bradley*, 433 U.S. 267, 289 (1978) (holding that federal courts can enjoin state officials "to conform their conduct to requirements of federal law…"). Defendants are NOT immune from this action. Indeed, they are necessary parties in order for Plaintiffs to receive the required constitutional relief.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. §1983. Municipalities and cities qualify as persons liable under §1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A governmental entity can be sued "for monetary, declaratory, and injunctive relief where…the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.*; *see also Bd. of County Comm'r of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Moreover, a city can be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Id.* at 690-91. "A local government cannot be held liable under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under §1983." *Id.* at 694.

Here, the application of the City's municipal ordinance in an unconstitutional manner has caused Plaintiffs to be deprived of their rights to practice religion freely and unburdened. Further, Plaintiffs have alleged that the City has an established--and unconstitutional--policy

when execution of a government's policy or custom…inflicts the injury that the government as an entity is responsible under §1983." *Id.* at 694.

Here, the application of the City's municipal ordinance in an unconstitutional manner has caused Plaintiffs to be deprived of their rights to practice religion freely and unburdened. Further, Plaintiffs have alleged that the City has an established--and unconstitutional--policy of pressuring churches, through abuses of municipal power, to relinquish their right to provide ministry and care to the poor. (Compl. ¶¶ 34; 36; 47; 54-56). Indeed, it has been the City's longstanding routine for over 20 years. (*See, e.g., Sonrise Christian Fellowship v. City of San Diego*, No. 86-1429 S (S.D. Cal. June 23, 1986); Exh. 1-2). This is sufficient to find municipal liability for a §1983 claim.

## CONCLUSION

Is the City entitled to threaten and intimidate a Church, but disavow these threats when called before the Court? Plaintiffs contend the answer is "No," and ask that the Court deny the motion to dismiss.

Dated: February 11, 2008

**DREHER LAW FIRM**

s/

Robert Scott Norman
Robert Scott Dreher
Attorneys for Plaintiffs
E-mail: scott@dreherlawfirm.com

N:\JD\CASES\264\PB UMC OPPO2.doc