1

**DREHER LAW FIRM**
2   Robert Scott Dreher (CSB No. 120527)
Robert Scott Norman (CSB No. 253185)
3   Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 202
4   San Diego, CA 92101
619-230-8828 / fax 619-687-0136
5

6   Attorneys for Plaintiffs

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  PACIFIC BEACH UNITED METHODIST )  Civil Case No.: 07 CV 2305LAB PCL
    CHURCH, a California Religious )
12  Corporation; and its Pastor APRIL )
    HERRON;                        )
13                                 )  **PLAINTIFFS' REPLY IN SUPPORT OF**
                                   )  **THEIR MOTION FOR PRELIMINARY**
14          Plaintiffs,            )  **INJUNCTION**
                                   )
15      vs.                        )
                                   )
16                                 )
    The CITY OF SAN DIEGO; CITY OF SAN )
17  DIEGO NEIGHBORHOOD CODE COM- )
    PLIANCE DEPARTMENT; Mayor JERRY )
18  SANDERS, City Council Members SCOTT )  Judge: Hon. Larry A. Burns
    PETERS, KEVIN FAULCONER, TONI )  Date:  February 25, 2008
19  ATKINS, TONY YOUNG, BRIAN MAIEN- )  Time:  10:30 a.m.
    SCHEIN, DONNA FRYE, JIM MADAFFER, )  Ctrm:  Courtroom 9, Second Floor
20  BEN HUESO, NCC Director MARCIA )
    SAMUELS, NCC Land Development )
21  Investigator PAMELA JONES, and City )
    Attorney MICHAEL J. AGUIRRE, in their )
22  official capacities; and DOES 1-25; )
                                   )
23                                 )
            Defendants.            )
24                                 )
                                   )
25  _____ )

26

27

28

## INTRODUCTION

Although for some people the game of golf may indeed be a religious exercise, Plaintiffs are not contending in this case that golf is a protected activity under the Constitution and RLUIPA.  Plaintiffs do contend, however, and Defendants don't dispute, that providing ministry, food and other care to the poor, the needy and the homeless, on Plaintiffs' property, in an area which is zoned to accommodate churches, is a religious exercise entitled to the full protection of this country's laws.

Plaintiffs are not alone in this traditional understanding of their core religious practices.  "[T]he concept of acts of charity as an essential part of religious worship is a central tenet of all major religions."  *Western Presbyterian Church v. Board of Zoning Adjustment*, 862 F. Supp. 538, 544 (D.D.C. 1994).  Judge Schwartz recognized that 22 years ago.[1] (*See Sonrise Christian Fellowship v. City of San Diego*, No. 86-1429 S (S.D. Cal. June 23, 1986); *Plaintiffs' Request for Judicial Notice* ("*RFJN*") ¶ 1-2; Exh. 1-2).

Plaintiffs ask this Court to allow them to practice religious activities within the walls of their own church without interference from the City.

//

//

---

[1]    Interestingly, Judge Schwartz's decision was referenced in an internal City memorandum used during Defendants' "investigation." (*See Declaration of Pamela D. Jones in Support of Defendants' Joint Opposition to Plaintiffs' Motion for Preliminary Injunction*; *Defendants' Exh. A*). The October 6, 1987 memorandum purported to distinguish between housing the homeless in churches (which Plaintiffs <u>do not</u> do) and feeding the homeless in churches (which Plaintiffs do). It noted that the *Sonrise* case "involved a particular religious group whose teachings included feeding the masses," and not providing housing to the homeless. (*See Exh. A*).

I.

## PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS
## OF THEIR FIRST AMENDMENT AND RLUIPA CLAIMS

**A.**    ***Providing Medical, Dental, and Other Services Aimed at Helping the Poor Are Religious Exercises Protected Under the First Amendment and RLUIPA.***

Although Defendants initially objected to Plaintiffs' meal ministry, Defendants now concede that this is a religious exercise protected under the First Amendment and RLUIPA. (*Defendants' Opposition p. 12, ll. 8-9*).    Defendants now shift their attention to Plaintiffs' other activities and object to the provision of medical and dental consultation as valid religious exercises.    However, Plaintiffs' religious exercise is not limited to providing food to the needy and includes all those activities consistent with their faith.

Defendants can't determine that Plaintiffs' practice of offering medical and dental consultation to the needy is not an activity normally associated with churches.    *Cf.* S.D. Mun. Code §113.0103.    Indeed, neither Defendants nor the Court can decide whether or not the Church's use of its own property has religious, symbolic, or sacramental importance.[2] "The prospect of church and state litigating about what does or does not have religious meaning touches the very core of the constitutional guarantee against religious establishment," and cannot occur. *New York v. Cathedral Academy*, 434 U.S. 125, 133 (1977).    The Court's "scrutiny extends only to whether a claimant sincerely holds a particular

---

[2]    *See, e.g., Western Presbyterian v. Bd. of Zoning Adjustment of the Dist. of Columbia*, 862 F. Supp. 538 (D.D.C. 1994), which held:

> Once the zoning authorities of a city permit the construction of a church in a particularly locality, the city must refrain, absent extraordinary circumstances, from in any way regulating what religious functions the church may conduct.    Zoning boards have no role to play in telling a religious organization how it may practice its religion.

*Id.* at 546.

belief and whether the belief is religious in nature." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

Nonetheless, courts have repeatedly recognized that providing essential services (including medical and dental care) to the poor and needy are forms of religious activity and worship protected under the First Amendment and RLUIPA.  *See, e.g., Capital City Rescue Mission v. City of Albany Bd. of Zoning Appeals*, 652 N.Y.S.2d 388, 390 (N.Y. App. Div. 1997) ("Here, it is not disputed that petitioner's functions are not for profit. Its mission statement also reflects its religious status. The proposed uses of the facility include providing <u>food</u>, <u>clothing</u>, <u>shelter</u>, <u>counseling</u>, <u>medical care</u>, <u>educational training</u> and <u>spiritual guidance</u> to disadvantaged individuals.") (emphasis added); *Stuart Circle Parish v. Board of Zoning Appeals*, 946 F. Supp. 1225 (E.D. Va. 1996) (holding that providing food and other care to the homeless is a protected religious exercise); *Henley v. City of Youngstown Bd. of Zoning Appeals*, 735 N.E.2d 433 (Ohio 2000) (holding that providing transitional apartments for homeless women and their children in a convent on church property was a religious use of the property permitted by the zoning regulations); *Solid Rock Ministries Int'l v. Monroe Bd. of Zoning Appeals*, 740 N.E.2d 320, 328 (Ohio Ct. App. 2000) (holding that a church facility used to house unwed pregnant teenagers was "an integral part of [the church's] Christian and missionary purposes..."), appeal dismissed, 736 N.E.2d 901 (Ohio 2000).

Moreover, the evidence here establishes beyond any question that the practice of providing food <u>and</u> care to the needy is an exercise of well-rooted and sincerely-held religious belief, grounded in two thousand years of Christian faith and history. (*Herron Decl.* ¶¶ 5-23; *RFJN* ¶ 3).  Indeed, the Bible is replete with passages commanding its followers to care for the poor (*See, e.g.,* 1 *Corinthians* 11:20-23; 1 *John* 3:17; *Ezekiel* 18:5-9).  This

biblical commandment is not merely limited to providing food to those in need, but is also exemplified by giving sight to the blind (*Matthew* 9:27-31), cleansing the leper (*Matthew* 8:2-4), restoring sanity to the mad (*Mark* 5:1-20), strength to the lame (*John* 5:1-9), and even life to the dead (*John* 11:17-44). (*See Herron Decl.* ¶¶ 7-23; *see also Luke* 7:22 ("the blind receive their sight, the lame walk, the lepers are cleansed, the deaf hear, the dead are raised, the poor have good news brought to them")).

It is without question that Plaintiffs view their activities at the Wednesday Night Ministry as the physical embodiment of their Christian Methodist faith[3] and, therefore, it is a religious exercise entitled to protection under the First Amendment and RLUIPA.

**B.    *The City Has Applied Its Municipal Ordinances In a Manner That Violates the First Amendment and RLUIPA.***

The crux of Defendants' argument that the First Amendment and RLUIPA don't apply is on the basis that the cited Municipal Ordinances are "valid and neutral laws of general applicability." *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872, 879-82. However, Plaintiffs aren't challenging the facial validity of the ordinances, but rather Defendants' threatened application of the ordinances to Plaintiffs.

The subjective assessments made by Defendants that Plaintiffs' activities were inconsistent with those normally associated with a church, together with the fact that Defendants singled-out Plaintiffs' Church (*Herron Decl.* ¶ 28; *Jones Decl.* ¶ 8), proves that this argument is without merit. The First Amendment and RLUIPA are implicated whenever a government takes into account particular details of a plaintiff's use of land when deciding

---

[3]    The significance of this practice for Methodists in particular was recognized by the *Stuart* court, which observed that "[c]aring for the poor has been central to the Methodist faith and was a formal teaching of John Wesley, the founder of Methodism." *Stuart Circle Parish*, 946 F. Supp. at 1236.

whether or not to permit a use.  *See Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006).

Plaintiffs operate on their property as a "church," defined under San Diego Municipal Code §113.0103 as "*an institution that people regularly attend to participate in or hold religious services, meetings, or other activities.*"  Churches or other places of worship are "Permitted" in Residential Zones, per Municipal Code §§131.0420 and 131.0422. Plaintiffs' participation in the Wednesday Night Ministry is within the usual reach of the terms "church" and "places of worship," and thus constitutes a permissible principal use in the Residential Zone in which the Church is located.  (*Compl.* ¶ 43, ll. 9-28).

Defendants seem to believe that Plaintiffs are operating a "Homeless Day Center." Municipal Code §131.0422 states that "Homeless Day Centers" are not permitted in Residential Zones.  But Pacific Beach United Methodist Church is not, and does not operate, a "homeless day center" -- Plaintiffs do not provide "basic services," "personal hygiene," "information and referral," "employment," "mail," or "telephone services" during daylight hours.  *Id.* §§141.0412(a)(3)(2000).

## II.
## PLAINTIFFS WILL SUFFER IRREPARABLE INJURY
## ABSENT INJUNCTIVE RELIEF

Defendants seem to believe that Plaintiffs object to the City's "investigation" of the Church's activities. However, Plaintiffs have nothing to hide and welcomed the City's investigation, assuming that once they saw the nature of Plaintiffs' activities, they would realize that Plaintiffs were only practicing their religion (and providing a sorely needed social service at no cost to the City).  The City's actions that Plaintiffs claim violate the First

Amendment and RLUIPA more accurately relate to the City's credible threats of imminent citation. (*See Compl.* ¶¶ 38, 42, 44; *Herron Decl.* ¶¶ 28-31).

The City has promised to impose civil and criminal liability against Plaintiffs simply for practicing their faith on their own property.  This irreparable harm is neither remote nor speculative, but actual and imminent.  *See, e.g., Stuart Circle Parish*, 946 F. Supp. at 1235. Defendants told Plaintiffs that they are in violation of the Code, that they will receive a "Notice of Violation" that is unappealable, and told them to hire a lawyer. (*Herron Decl.* ¶¶ 28; 30; 32-33).  Defendants said that Plaintiffs will have to discontinue their activities or face civil and criminal prosecution. (*Herron Decl.* ¶ 33). Subjecting Plaintiffs to a choice between abandoning their religious exercise or facing civil and/or criminal punishment constitutes "irreparable harm" for the purposes of injunctive relief.  *See, e.g., Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1172.

## CONCLUSION

Plaintiffs respectfully ask the Court to issue the requested Injunction, enjoining Defendants from citing or arresting Plaintiffs for violation of Municipal Code §§131.0406, 131.0420, 131.0422, and 141.0412(a)(3), or from initiating any legal action to prevent, hinder, or delay Plaintiffs from attending and participating in Wednesday evening services at Pacific Beach United Methodist Church.

**DREHER LAW FIRM**

Dated: February 15, 2008          **s/ Robert Scott Norman**
                                  Robert Scott Norman
                                  Robert Scott Dreher
                                  Attorneys for Plaintiffs
                                  E-mail: scott@dreherlawfirm.com

N:\JD\CASES\264\REPLY BRIEF.doc